Filed 7/14/15  In re Bella P. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re BELLA P., a Person Coming Under the Juvenile Court Law. | |
| | D067508 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14907) |
| v. | |
| LUIS P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica R. Cortez, Deputy County Counsel, for Plaintiff and Respondent.

Dependency Legal Group of San Diego and Carolyn K. Levenberg for Minor.

Luis P. appeals an order terminating his family reunification services under Welfare and Institutions Code section 366.21, subdivision (e)[1] in the juvenile dependency case of his minor daughter Bella P.  Luis contends (1) the court erred by finding that Luis had received reasonable reunification services, (2) the court applied the wrong legal standard in assessing whether there was a substantial probability Bella may be returned to Luis by the 12-month review hearing, and (3) the court erred by not exercising its discretion to extend reunification services because the court was unaware it had such discretion.  We disagree with Luis's contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

On March 28, 2014, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b) on behalf of one-month-old Bella.  The Agency alleged that Bella had tested positive for opiates at birth, suffered withdrawal symptoms, and had little prenatal care.  The Agency further alleged that Bella's mother K.W. had tested positive for opiates and had a long history of drug abuse, including abuse of heroin and methamphetamines.[2]  Luis admitted a history of drug abuse as well, but he denied knowing that K.W. had used drugs during pregnancy.  The Agency concluded that Bella had suffered, or was at substantial risk of

---

[1]     Further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]     K.W. is not a party to this appeal.  She will be discussed only where necessary for an understanding of the issues raised by Luis.

suffering, serious physical harm or illness as a result of her parents' failure to protect her or provide for her care.

At the time of the petition, Luis was incarcerated on charges of receiving stolen property and driving with a suspended license. Luis had previously been convicted of second degree robbery and several parole violations. He had a documented gang affiliation. Luis had a juvenile record as well. According to his probation officer, Luis's juvenile record included a conviction for forced oral copulation of a 12-year-old girl at a group home. Luis was 17 years old at the time. Luis was also accused of touching his brother inappropriately.

At Bella's detention hearing, the court found the Agency had made a prima facie showing under section 300, subdivision (b) and ordered that Bella be detained in out-of-home care. Luis remained incarcerated. The court made a "provisional finding" that Luis was Bella's presumed father. The court ordered voluntary services and liberal supervised visitation for Luis while he was incarcerated. (The court's written order, however, stated that supervised visits were to occur after Luis had been released.) The court also authorized $25 per month for collect calls from Luis to Bella's caregivers. Luis later reported trouble making use of this allowance, perhaps due to a misunderstanding regarding the form of the credit.

An Agency social worker met with Luis while he was in jail. Luis told the Agency he wanted to participate in services and reunify with Bella. Luis and K.W. submitted the issue of jurisdiction to the court based on the Agency's evidence. The court sustained the allegations of the petition and set a disposition hearing. The court also

3

found that Luis was Bella's presumed father under Family Code section 7611, subdivision (d). Luis remained incarcerated.

The Agency submitted a case plan for Luis. The plan included three service objectives: (1) "Do not break the law. Avoid arrests and convictions." (2) "Show that you accept responsibility for your actions." (3) "Follow all conditions of probation/parole." The plan also included requirements that Luis participate in weekly parenting education classes, complete an assessment for a sexual abuse treatment program, and follow any recommendations from the program.

At the disposition hearing, the court removed Bella from K.W.'s custody, found that placing Bella with Luis would be detrimental, and continued Bella's placement in foster care. The court set six- and 12-month review hearings.

In advance of the six-month review hearing, the Agency submitted a status report to the court. The Agency reported that Luis could not participate in reunification services based on his classification in jail. Luis did make several calls from jail to Bella's caregivers and inquired about her condition. The Agency also reported that Luis had been released from custody approximately two months after Bella's disposition hearing. A week after his release, Luis contacted the Agency and met with an Agency social worker. Because Luis did not have housing or employment plans, the Agency social worker gave him referrals for employment services and Cal Works. The Agency social

4

worker reviewed Luis's case plan with him and had him sign a copy.[3] Luis told the

Agency he had no transportation but would try to attend the sexual abuse treatment

program. The Agency social worker told Luis the Agency could provide public

transportation and provided him with bus passes. Luis told the social worker he loved

Bella and wanted to reunify with her.

According to the report, Luis was arrested again less than a month after his

meeting with the Agency social worker. The Agency received no contact from Luis in

the interim, and Luis did not visit Bella. After his arrest, Luis contacted the Agency from

jail. He said he was sentenced to two years in prison and expected to be released within

five to seven months. Luis said he was arrested because he missed a meeting with his

probation officer. Three weeks later, the Agency social worker mailed pictures of Bella

to Luis.

Approximately two months after his arrest, Luis was transferred to state prison.

The Agency set up a calling card there. The Agency contacted prison officials by

telephone and e-mail to determine whether inmates could participate in rehabilitation

services. Although prison officials initially indicated that services might be available, the

---

[3] The Agency's report states, "It appears that a recommendation for substance abuse services was omitted [from Luis's case plan] by error given [Luis]'s substance abuse history." Attached to the report was an updated case plan that added an additional two service objectives: (4) "Stay free from illegal drugs and show your ability to live free from drug dependency. Comply with all required drug tests." (5) "Stay sober and show your ability to live free from alcohol dependency." The record does not include a copy of the case plan Luis signed, so it is unclear whether Luis was informed of these additional requirements. Luis told the Agency that he attended Alcoholics Anonymous (AA). The Agency social worker asked Luis to provide attendance logs with signatures.

Agency later learned that Luis would not have access to any services because he was an unclassified prison inmate subject to maximum security restrictions. A prison official told the Agency that Luis would not have access to programs until he was classified. The official said Luis might remain unclassified for his entire prison term given its length.

The Agency recommended that the court terminate Luis's reunification services. The Agency wrote, "[Luis] made no attempt to participate in services or visitations while he was free from jail. While he was in jail, [Luis] stated he would like to participate in a plan of reunification, but he did not take corrective action when he had an opportunity to do so. It appears he will not be released from prison in the next reporting period, and his efforts thus far have been insufficient."[4]

In an addendum report, the Agency stated that it had received two letters from Luis while in prison. Luis was upset that reunification services could be terminated because he felt he did not have a chance to participate in services. Apparently in response to Luis's request, the Agency mailed a parenting education packet to him. Luis also wrote that he was attending church services and AA and Narcotics Anonymous (NA) meetings when available in prison. The Agency confirmed it had set up a telephone account for Luis, though he was unable to use the telephone based on his classification status. The Agency also provided Luis with his attorney's contact information.

At the contested six-month review hearing, the Agency continued to recommend termination of services for Luis. Bella's counsel concurred. Luis opposed, arguing that

---

[4]    Based on K.W.'s progress, the Agency recommended her services be extended through the 12-month date.

he was committed to reunification but services were not available to him because of his incarceration. The court received the Agency's status report and addendum into evidence. The court also heard testimony from an Agency social worker and Luis. Among other things, the Agency social worker testified that he provided Luis with appropriate referrals during the meeting in which Luis signed the case plan. Luis testified that he understood the components of his case plan, that he attempted to pursue the Agency's referrals while he was out of custody but had problems with payment, and that he was unable to contact the social worker for payment verification. Luis also testified that he did not have access to most services while in prison but he attended church weekly and AA/NA meetings monthly. Luis said he was scheduled to be released approximately two months after the six-month review hearing. Luis planned to enroll in an inpatient therapy and housing program upon his release. Luis asked the court to continue reunification services because he believed he could be a good father to Bella and complete all of the services the Agency required of him.

The juvenile court found that Luis had been provided with reasonable reunification services but that Luis had not made progress with his case plan. The court determined there was not a substantial probability that Bella would be returned to Luis by the 12-month review hearing. The court stated, "I do think [Luis is] very sincere in wanting to reunify with his daughter and have a relationship with her. I think what's plagued the father is that he was first incarcerated when Bella was just about three or four weeks old. When he was released in August, he was unable to see her during that one month before he was rearrested. So [Luis] does not have a relationship with Bella

7

because of those circumstances." Recognizing that Luis did not have access to services while incarcerated, the court explained, "I think that is unfortunate. I think if someone is incarcerated, there needs to be some type of consideration given the fact if found they are fit, that still they should be afforded an opportunity for services, barring other [circumstances]. But that's an executive branch decision, not a judicial branch decision. [¶] I think the social worker did an [admirable] job in trying to help the father, notwithstanding those obstacles, by sending him the incarcerated parenting packet to him and trying to get the phone cards working for the father." The court terminated Luis's reunification services. Luis appeals.

DISCUSSION

I

Luis contends the juvenile court erred by finding that the Agency provided him with reasonable services. By statute, the juvenile court may not terminate a parent's reunification services at the six-month review hearing if it finds that "reasonable services have not been provided" to the parent. (§ 366.21, subd. (e); see *Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 594 (*Katie V.*) ["Under the statutory scheme, review hearings are held every six months, at which time the juvenile court determines, among other things, whether the child welfare agency has offered the parent reasonable reunification services."].)

" '[T]he focus of reunification services is to remedy those problems which led to the removal of the children.' [Citation.] A reunification plan must be tailored to the particular individual and family, addressing the unique facts of that family. [Citation.] A

8

social services agency is required to make a good faith effort to address the parent's problems through services, to maintain reasonable contact with the parent during the course of the plan, and to make reasonable efforts to assist the parent in areas where compliance proves difficult. [Citation.] However, in most cases more services might have been provided and the services provided are often imperfect. [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*Katie V., supra*, 130 Cal.App.4th at pp. 598-599.)

Absent a finding of detriment to the minor, an incarcerated parent must receive reasonable services as well. (§ 361.5, subd. (e)(1); see *Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1028.) "An incarcerated or detained parent may be required to attend counseling, parenting classes, or vocational training programs as part of the reunification service plan if actual access to these services is provided." (§ 361.5, subd. (e)(1).) Other services may include "(A) Maintaining contact between the parent and child through collect telephone calls. [¶] (B) Transportation services, where appropriate. [¶] (C) Visitation services, where appropriate." (*Ibid.*)

"This statute reflects a public policy favoring the development of a family reunification plan even when a parent is incarcerated. [Citation.] The department must preliminarily identify services available to an incarcerated parent. [Citation.] It cannot delegate to an incarcerated parent the responsibility for identifying such services. [Citation.] The department's employees may not simply conclude that reunification

9

efforts are not feasible on the sole ground the parent is incarcerated." (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011-1012.)

"When a finding that reunification services were adequate is challenged on appeal, we review it for substantial evidence." (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1158.)  " 'In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent.  We must indulge in all legitimate and reasonable inferences to uphold the verdict.  If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed.' "  (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1473.)

We conclude the evidence supports the juvenile court's finding that Luis had received reasonable reunification services.  Although the Agency's efforts in this case were not perfect, the Agency made reasonable efforts to assess the problems leading to Bella's removal, recommend appropriate services for Luis, maintain contact with Luis and facilitate his participation in those services, and support Luis when compliance proved difficult.  The main barriers to Luis's successful completion of services appear to have been his failure to access services while out of custody and his rearrest, which placed him beyond the reach of many of the Agency's services, rather than any unreasonable efforts by the Agency.

Luis contends that the Agency did not sufficiently assist him in complying with his case plan.  Luis points out that the Agency did not provide services at the beginning of the case, while Luis was incarcerated, and thereafter met with Luis only sporadically.  However, at the beginning of the case, Luis was incarcerated in a facility that did not

10

offer services to inmates with Luis's classification. The Agency provided Luis with a collect calling credit to contact Bella's caregivers, but the Agency could not refer Luis to services where none were available. Moreover, the court did not formally find Luis to be a presumed father until several months after Bella's detention. Prior to that time, Luis was not entitled to court-ordered reunification services. (See *In re Zacharia D.* (1993) 6 Cal.4th 435, 451.)

After the court found Luis was Bella's presumed father, the Agency drafted a case plan for him and submitted it to the court. A week after Luis was released from jail, the Agency provided him with appropriate referrals pursuant to that plan. Although the Agency attempted to amend the case plan to add substance abuse services after the initial case plan was approved, Luis has not shown this attempted amendment made the Agency's efforts unreasonable. We note that Luis claimed to have participated in AA and NA programs whenever possible, even before the Agency attempted to amend his case plan to add those services. The Agency's efforts to assist Luis in complying with his case plan were not unreasonable.

Luis also contends the Agency did not maintain regular contact with him. We disagree. The Agency maintained reasonable contact with Luis under the circumstances. An Agency social worker met with Luis in jail after the detention hearing and documented Luis's family history, his childhood, his work experience, his challenges with drugs and alcohol, his criminal history, and his relationship with K.W. The Agency also contacted Luis's probation officer. After Luis was released from jail, an Agency social worker met with him and went over his case plan. The Agency provided Luis with

11

appropriate referrals and bus passes. Within a month, however, Luis was rearrested. He spoke to the Agency by telephone, and the Agency social worker sent him pictures of Bella. After Luis was transferred to state prison, the Agency set up a calling card for him and attempted to determine what services were available. After finding out no services aside from AA and NA were available, the Agency sent two letters to Luis and a parenting workbook. Although Luis shows there were delays in certain Agency communications, the juvenile court was entitled to find that the Agency's efforts to maintain contact with him were reasonable under the circumstances, given Luis's shifting custody status and the difficulty communicating with him. The Agency's efforts could have been more persistent, but they were not unreasonable.[5]

Luis argues the Agency failed to take into account his incarceration in providing services. While a court may not require an incarcerated parent to participate in services to which he or she has no access (§ 361.5, subd. (e)(1)), Luis's situation was not so simple. Luis was initially held in local jail, which the Agency determined offered no

---

[5] Luis also faults the Agency for failing to facilitate contact between him and Bella. Luis argues that the Agency should have transported Bella to visit him in jail during the first few months of the dependency case. Luis has not shown the Agency acted unreasonably. Bella was a special needs child who spent time in the neonatal intensive care unit after her birth. During the first few months of the dependency case, Bella had numerous medical conditions, one of which required surgery. Luis has not shown it was unreasonable for the Agency not to set up visitation in jail under these circumstances. We therefore need not address the Agency's argument regarding forfeiture. Luis also argues that the Agency "thwarted" his efforts to contact Bella by telephone. We disagree. The difficulty Luis encountered calling Bella at the outset of the case appeared to have been caused by a misunderstanding regarding the form of payment authorized by the court, not any unreasonable actions by the Agency. Luis's inability to call Bella from state prison was likewise a result of his classification status, not any Agency action.

12

services. But Luis was scheduled to be released during the reporting period, which meant the Agency's case plan properly reflected the services available to Luis out of custody. When Luis was rearrested, he was briefly held in local custody before his transfer to state prison. The Agency contacted prison authorities in an effort to determine what services were available there. Prison officials told the Agency services might be available, but later determined that Luis could not have access to services because of his classification status. The Agency then mailed Luis a written parenting workbook to complete. Given these facts, the juvenile court was entitled to find that the Agency adequately considered Luis's incarceration in providing services.

II

Luis further contends the court erred by not finding a substantial probability Bella may be returned to Luis by the 12-month review date. (§ 366.21, subd. (e).) The statute provides, in relevant part, as follows: "If, however, the court finds there is a substantial probability that the child . . . may be returned to his or her parent or legal guardian within six months . . . , the court shall continue the case to the 12-month permanency hearing." (*Ibid.*) "Literally, the statute commands the court to determine whether there is a strong likelihood of a *possibility* of return (not simply a strong likelihood the return will in fact occur)." (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 181 (*M.V.*).) The court may consider any relevant evidence in making this finding, including whether a parent has consistently and regularly contacted and visited the minor, whether the parent has made significant progress in resolving the problems that led to the minor's removal, and whether the parent has demonstrated the capacity and ability to complete the objectives

13

of his or her case plan and to provide for the minor's safety, protection, physical and emotional well-being, and special needs. (*Ibid.*)

Luis does not challenge the evidence supporting the juvenile court's finding. Instead, he argues the court used the wrong legal standard in assessing the probability of return. At the six-month review hearing, the court stated, "With respect to the father, the court finds by clear and convincing evidence that Bella was under the age of three at the time of initial removal, and finds by clear and convincing evidence that the father has not participated regularly in, nor has he shown substantive progress in the court-ordered treatment programs. The court would find by clear and convincing evidence that there's not a substantial probability that Bella would be returned to care of her father by the 12-month review." Luis contends that the court's use of the phrase "would be returned," rather than the statutory phrase "may be returned," shows the court did not apply the correct legal standard under section 366.21, subdivision (e).

As Luis points out, other Courts of Appeal have found error when a juvenile court misperceives or misidentifies the standard for probability of return under section 366.21, subdivision (e). (See *S.T. v. Superior Court* (2009) 177 Cal.App.4th 1009, 1016 (*S.T.*); *M.V., supra*, 167 Cal.App.4th at p. 181.) We will therefore determine whether the juvenile court's error here was prejudicial, i.e., whether it is reasonably probable that Luis would have achieved a more favorable result absent the error. (See *S.T.,* at p. 1016; *M.V.,* at p. 183.)

We conclude Luis has not established prejudice. As an initial matter, the juvenile court's misstatement of the standard under section 366.21, subdivision (e), while material,

14

did not dramatically depart from the correct standard. Unlike *S.T.* and *M.W.*, which found prejudicial error, we are not presented with the situation where the juvenile court felt it was required to find certain circumstances present in order to find a probability of return (and therefore did not consider all relevant evidence). (See *S.T., supra*, 177 Cal.App.4th at p. 1016 ["The court mistakenly believed that it lacked discretion to continue reunification services unless the three factors listed in section 366.21, subdivision (g)(1), (A)-(C) were satisfied."]; *M.V., supra*, 167 Cal.App.4th at p. 183.) Here, the juvenile court considered all relevant evidence and determined that there was not a substantial probability that Bella "would be returned," rather than "may be returned," by the 12-month review date. Among the circumstances before the court were the following: (1) Luis's failure to participate in services while out of custody, (2) Luis's failure to visit or contact Bella while out of custody, and (3) Luis's prompt rearrest and reincarceration, which would last until shortly before the 12-month review hearing.[6] As the court noted, "[I]t appears that [Luis] will be released either just before or after the permanency hearing date without an established relationship [with Bella] and without progress in services. Therefore, the court cannot find there would be a substantial probability of return." Given these circumstances, it is not reasonably probable that Luis

---

[6]    Luis's reply brief makes reference to certain events that occurred after the court's six-month review hearing. The Agency filed a motion to strike those references, and Luis does not oppose. "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Absent exceptional circumstances, we adhere to this general rule. (*Ibid.*) We will therefore grant the Agency's motion to strike and disregard Luis's references to posthearing events in his reply brief.

would have achieved a more favorable result had the juvenile court applied the correct standard, "may be returned," under section 366.21, subdivision (e).

III

Luis contends the court was unaware of its discretion to continue services for Luis past the six-month review hearing. "Where, as here, the court continues one parent's services and does not set a section 366.26 hearing, it retains discretion to terminate the other (nonreunifying) parent's services." (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 881 (*Katelynn Y.*).) Because the juvenile court here continued services for K.W., and did not schedule a section 366.26 hearing, the court had the discretion whether to terminate (or continue) Luis's services as well.

"In exercising its discretion, the court has 'the ability to evaluate whether the parent will utilize additional services and whether those services would ultimately inure to the benefit of the minor.' " (*Katelynn Y., supra*, 209 Cal.App.4th at p. 881.) "The parent seeking additional services has the burden of showing such an order would serve the child's best interests." (*Ibid.*) "We will not disturb the court's determination unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. When two or more inferences reasonably can be deduced from the facts, we have no authority to reweigh the evidence or substitute our judgment for that of the juvenile court." (*Ibid.*)

While "[a] trial court's failure to exercise its discretion generally requires reversal" (*S.T., supra*, 177 Cal.App.4th at p. 1016), Luis has not shown that the juvenile court failed to exercise its discretion here. The record shows that Luis's counsel argued it was

16

in Bella's best interests to provide him with services; the juvenile court disagreed. Luis points to the following statement by the juvenile court: "I think that is unfortunate. I think if someone is incarcerated, there needs to be some type of consideration given the fact if found they are fit, that still they should be afforded an opportunity for services, barring other [circumstances]. But that's an executive branch decision, not a judicial branch decision." The juvenile court's statement, however, lamented the unavailability of services in California's prisons. It was not a statement of the court's belief that it lacked discretion to continue services for Luis. Luis's argument that the court was unaware of its discretion is therefore unpersuasive.

DISPOSITION

The order is affirmed.


HALLER, Acting P. J.

WE CONCUR:


McDONALD, J.


AARON, J.

17