Filed 4/21/22  In re A.W. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.W., a Person Coming Under the Juvenile Court Law. | D079417 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. EJ4568) |
| Plaintiff and Respondent, | |
| v. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| J.W., | |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 13, 2022, be modified as follows:

1.  On page 10, first paragraph, after the third sentence (starting with "Minor's counsel" and ending with "12-month date"), add as new footnote 3 the following footnote, which will necessitate renumbering of all subsequent footnotes.

Minor's counsel argued that there was only a month and a half from the contested 6-month hearing until the 12-month date.  Minor's brief conceded this was error.  A.W. was removed on October 2, 2020.  The contested jurisdiction hearing was held on December 9, 2020.  The date A.W. entered foster care was December 1, 2020, which is 60 days from the date of removal.  (§ 361.49.)  The 12-month date was, therefore, December 1, 2021.  (§ 361.5(a)(1)(B).)

2.  On page 15, last paragraph, after the first sentence (starting with "Here, there was" and ending with "12-month date"), the following language is to be inserted, and the remainder of the original paragraph which spans pages 15 and 16 (starting with "After A.W. was detained" and ending with "Mother did not do so") shall be reformatted into a new and separate paragraph.

> The court commented that there was no substantial probability of return "in the short time frame that we have before this court."  In our view, substantial evidence supports this finding whether the court considered that "short time frame" to be the month and a half erroneously referred to by Minor's counsel or the approximately four months remaining in the 12-month period from the date A.W. entered the foster care system.  (§§ 361.5, 361.49.)  Both are short periods and the evidence before the court supported its conclusion.

There is no change in judgment.

The petition for rehearing is denied.

HUFFMAN, Acting P. J.

Copies to:  All parties

Filed 4/13/22  In re A.W. CA4/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.W., a Person Coming Under the Juvenile Court Law. | |
| | D079417 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. EJ4568) |
| Plaintiff and Respondent, | |
| v. | |
| J.W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis, III, Judge.  Affirmed.

Brent Riggs, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

Emily Uhre, under appointment by the Court of Appeal, for Minor.

J.W. (Mother) appeals an order declining to extend her reunification services for minor A.W., who was under three years old at the time of detention, after the six-month review period. Mother contends the juvenile court abused its discretion in declining to extend her services pursuant to Welfare and Institutions Code section 366.21, subdivision (e)(3).[1] Alternatively, Mother contends she was denied due process and was not given sufficient notice because minor's counsel did not file a section 388 petition to terminate her services and the court did not make certain findings under section 361.5, subdivision (a)(2)(A)–(C). She also contends the court abused its discretion in denying her attorney's request to continue the contested hearing due to her absence.

We conclude there is substantial evidence to support the juvenile court's finding that Mother made no substantial progress in her case plan and the court did not abuse its discretion in declining to extend Mother's services. As to the first alternative ground, Mother forfeited her procedural challenge to minor's counsel's request to terminate services because she did not object to the proceeding. Even if she did not forfeit the issue, we conclude the requirements under sections 361.5, subdivision (a)(2) and 388, subdivision (c)(1) for a motion to "terminate" existing services do not apply to the court's consideration at a six-month review hearing under 366.21, subdivision (e)(3) of whether to continue services for a parent of a child under three. As to the second alternative ground, the trial court did not abuse its discretion in denying a continuance request because Mother voluntarily failed to appear for the scheduled hearing. The order is affirmed.

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Detention.*

Police officers responded to a call by a tow truck driver who said someone threatened him with a gun while towing a vehicle. The officers stopped a vehicle that was attempting to flee the scene. Mother and two-year-old A.W. were passengers in the vehicle. Mother was arrested on an outstanding robbery warrant, which she said was for stealing cleaning supplies and then failing to appear in court. Mother's boyfriend, who is not the biological father of A.W., was arrested for brandishing a loaded firearm at the tow truck driver, for being a felon in possession of a loaded firearm, and for child endangerment.

Mother claimed her boyfriend received a call about a tow truck confiscating vehicles at a collision repair shop where he worked because the owner lost the business. She said the boyfriend was attempting to retrieve some personal vehicles he stored at the shop when the incident occurred. Mother denied knowing he had a gun and said she only witnessed her boyfriend bickering with the tow truck driver.

Mother, who was nine months pregnant, admitted she used "a little bit of drugs," but said she was trying to stop during her pregnancy. She used methamphetamine with her boyfriend on the day of her arrest, however, while A.W. was alone in an adjacent bedroom.

This was not Mother's first contact with the Agency. Several reports were made in 2019 about Mother's use of cocaine or methamphetamines and criminal behavior such as selling "salt" to pass for cocaine or crystal methamphetamines, stealing items, robbing people, and choosing to be homeless with A.W. When Mother and A.W. were found in a car without a license plate in December 2019, Mother said she was kicked out of her

3

apartment for having her boyfriend over. She declined help finding housing, saying, "I'm just chilling in my car and steal stuff when I need it." She said she and her boyfriend used methamphetamines in her car.

A.W. was detained and placed at the Polinsky Children's Center on October 2, 2020. The Agency filed a petition three days later. The Agency expressed concern about A.W.'s continued exposure to unstable environments, illegal activity, and drug abuse. Mother demonstrated significant lack of insight about the dangers of inadequate environments for young children. A.W.'s father was incarcerated and was unable to protect her at the time.

The court found detention was necessary due to a substantial danger to the physical health of the child and removed her from her parents' care. The court ordered voluntary services to be provided as soon as possible to effectuate reunification. The court ordered the Agency to provide services for crisis intervention, case management, counseling, and transportation. The court ordered reasonable supervised visitation while Mother was in custody and liberal supervised visitation after her release.

B.    *Events Between Detention and the Contested Jurisdiction and Disposition Hearing.*

A.W. was thereafter placed with a relative who was willing to adopt her. The Agency's jurisdiction/disposition report dated October 28, 2020 stated that a child and family team meeting was pending to discuss services. Once that meeting occurred, the Agency planned to submit a case plan. At the scheduled adjudication and disposition hearing, Mother appeared by telephone. Mother's counsel reported that Mother was participating and engaged in a McAlister treatment program, as well as parenting classes and

therapy. At Mother's request, the court set a contested adjudication and disposition hearing.

Mother gave birth to A.W.'s sibling a couple of weeks thereafter. The infant tested positive for drugs. That child was subsequently removed from Mother and placed with A.W.'s relative caregiver.[2]

The court held the contested adjudication and disposition hearing on December 9, 2020, after the clerk of the court attempted unsuccessfully to reach Mother to appear telephonically. The court received into evidence an addendum report dated December 2, 2020, which included an initial case plan.

The stated goal of the initial case plan was for A.W. to return home by June 2, 2021. The parents were required to work with the Agency to show that they could safely parent A.W., maintain a stable home that is free from drugs and illegal activity, and meet all of A.W.'s emotional and physical needs. The Agency wanted to see the plan in place and working continuously for six months before allowing A.W. to return home. Mother's service objectives included developing positive support systems, avoiding arrests and convictions, paying attention to and monitoring the child's health, safety and well-being, showing an ability to live free from illegal drugs, and complying with required drug tests. Mother was required to participate in a parenting education program, substance abuse services, and substance abuse testing.

Mother's counsel asked the court to dismiss the petition contending that the Agency had not met its burden. If the court found jurisdiction,

---

[2] A.W.'s sibling was removed from Mother's care a couple of weeks after birth. Mother took the child to visit the child's father, who was abusing controlled substances. The child became infected with a respiratory illness, which caused vomiting and fever.

Mother's counsel requested placement of A.W. with Mother. Counsel said Mother was engaged in a program through McAlister for substance abuse and she had no missed or dirty drug tests. Mother was willing to participate in all aspects of her case plan. Alternatively, Mother's counsel asked that the minor remain in the current placement.

The court, by clear and convincing evidence, found jurisdiction and declared the child a dependent pursuant to section 360, subdivision (d). The court removed A.W. from Mother's custody concluding there was a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child, or there would be such a danger if the child were returned home. The court found the Agency made reasonable efforts to prevent or eliminate the need for removal, but that there were no reasonable means by which the child could be protected without removal from Mother's physical custody. The court found Father was a non-custodial parent, but that it would be detrimental to place the child with him.

The court ordered the agency to provide services to both Mother and Father consistent with the case plan. The court ordered Mother to comply with the plan.

C.   *Events Over the Six-Month Review Period.*

Over the next six months, A.W. appeared comfortable in her placement with her paternal relative and her sibling. The caregiver met the physical, emotional and developmental needs of both children.

Mother, however, struggled with consistency in her case plan services. She initially participated remotely in outpatient drug treatment, but said she stopped attending in December 2020 due to housing instability. She contacted a substance abuse specialist in January 2021 for inpatient services and scheduled an intake at the Family Resource Center (FRC) for February

6

2021.  She never entered the substance abuse program.  She started visiting the children at the Family Visitation Center because she was habitually late for caregiver-facilitated visits.  She had good attendance for the visits at the Family Visitation Center, but continued to be habitually late.

Mother did not communicate with the social worker throughout the month of February.  She did not respond to the social worker's phone calls and text messages.  The children's caregiver told the social worker that Mother still had no housing, but that Mother called for updates about the children.

Mother contacted the social worker in March 2021 to report that she completed an online parenting class.  She said she had a job with a cleaning company and signed a lease to move into an apartment in April 2021.

The caregiver noticed in March 2021 that A.W. had increased anxiety, tantrums, and possible night terrors that disrupted her sleep and those of others in the home.  The behaviors appeared to increase after visiting with or receiving packages from Mother.  A.W. calmed considerably over the following months.

The caregiver informed the social worker of two instances when Mother made comments about taking the children and running away.  Mother came into the caregiver's home unannounced and without permission.  She became frustrated or angry when the caregiver said she could not make visitation changes or decisions without the Agency's approval.  The caregiver was worried Mother would come to her home and take the children.

Mother participated in a child family team meeting in April 2021.  The team discussed the concerns about Mother's inconsistency in both services and visitation.  Mother said she would work on those issues.  The team provided Mother with another referral to a substance abuse specialist.  She

also received referrals for housing and services from a community treatment program that provides comprehensive, individualized services. Their collaborative and recovery-oriented programs provide a wide range of support including psychiatric assessment, individual supportive therapy, substance abuse treatment, supportive housing, supportive employment and education development, links to resources, peer support, and group counseling.

Thereafter, Mother sent messages to the social worker about her desire for unsupervised visits. The social worker reminded Mother that she needed to participate in a drug treatment program and again provided contact information for a substance abuse specialist.

Mother reported to the social worker on May 3, 2021 that she was not sentenced to jail for the charges arising from her October 2020 arrest. She said she was struggling with housing and preferred to enter an inpatient treatment program. She said she called the FRC and was told to keep calling to see when a "detox" bed would open up.

A week later, on May 10, 2021, Mother was arrested and charged with transporting or selling methamphetamine and possession for the sale of methamphetamine. She was also charged with enhancement allegations for committing a felony while out on bail or release, possession of a firearm without being the registered owner, and carrying a loaded firearm in public.

After this arrest, Mother initially moved in with her father and said she scheduled another intake with McAlister to restart outpatient drug treatment. She did not, however, enroll in an outpatient treatment program. She moved out of her father's home a few weeks later and to an unincorporated area of San Diego County.

Mother wanted A.W. and her sibling returned to her care. She thought she should be awarded unsupervised and overnight visits. For concurrent

8

planning, Mother stated that she wanted the children to remain together. Although she was aware that the current caregiver was willing to adopt both children, she suggested a different relative placement for adoption if she could not reunify. Father was incarcerated and could not provide his perception of the family needs at the time of the Agency's report. However, for purposes of concurrent planning, Father wanted A.W. to be adopted by her current caregiver, who was his relative.

In its June 2021 status review report, the Agency noted that A.W. had been in protective custody for eight months since the incident with the tow truck driver. Throughout that period Mother showed a continued lack of insight regarding the danger the incident posed to A.W. Shortly after that incident, Mother gave birth to another child who tested positive for drugs. Although Mother was initially able to care for A.W.'s sibling, that child was removed when Mother continued to make poor choices and demonstrated lack of insight into the child's well-being and safety. Mother continued to engage in illegal activity as shown by her recent arrest for drug and weapon charges.

Mother did not communicate regularly with the Agency and had not completed or participated in enough services to show substantial progress on her case plan. Nevertheless, the Agency requested an additional six months of reunification services for Mother because Mother visited A.W. each week, said she had employment and housing, and expressed a desire to participate in services. The Agency recommended continuation of reunification services for Father to the 12-month date in the hope that after his release from prison he would fully engage in his case plan and services.

The Agency's case plan update in June 2021 included the same service objectives as those identified in the December 2020 plan. It required Mother to participate in substance abuse testing and substance abuse treatment.

At the scheduled six-month review hearing on June 9, 2021, minor's counsel asked the court to set a trial date for the issue of terminating Mother's reunification services. Minor's counsel noted that A.W. was under three years old, Mother was recently re-arrested, and she had not engaged in substance abuse treatment. Minor's counsel argued there was no substantial probability the child could be returned by the 12-month date. Minor's counsel did not request termination of Father's reunification services because he was reportedly getting out of jail.

Mother's counsel submitted on the Agency's report. He did not object to the trial set request by minor's counsel, but did not join it. The court set a pretrial conference followed by a contested hearing at the end of July. The court advised Mother, who appeared by telephone, that it was moving forward with the hearing about termination of services and admonished her to stay in touch with both the Agency and her attorney.

Mother appeared by telephone at the pre-trial status conference at which the court confirmed the trial date. Mother's counsel asked the Agency to prepare an addendum report prior to the hearing.

The July 26, 2021 addendum report prepared for the sibling's case gave more details of Mother's May 2021 arrest. After a traffic stop, law enforcement found a loaded handgun, 10 grams of methamphetamine, and other paraphernalia. Mother admitted she owned the gun and the methamphetamine. She also admitted she smoked methamphetamine daily. The Agency's recommendations remained the same.

D.	*The Contested Hearing Regarding Mother's Services.*

The matter regarding Mother's services as to A.W. proceeded to trial on July 28, 2021.[3] Mother did not appear for the hearing even though the court made three attempts to contact her. Her counsel asked for a continuance, which the court denied finding she had notice of the hearing and voluntarily did not appear.[4]

The court received into evidence the June 9, 2021 status review report as well as the July 26, 2021 addendum report prepared for the sibling's case. Counsel asked no questions of the Agency's social worker. Mother's counsel presented no affirmative evidence.

The Agency asked the court to find that return of A.W. to either parent would be detrimental and to find that reasonable services were provided. The Agency recommended that both parents continue to receive services until the 12-month date. The Agency acknowledged the standard for continuing services at the six-month review is permissive and that Mother had only done the "bare minimum." The Agency recommended continued services for Mother, however, because services were continuing for Father and A.W. was placed along with her sibling with a relative.

Minor's counsel argued the court should not continue Mother's services because there was clear and convincing evidence that the Agency provided Mother with reasonable services and that there was no substantial

---

3	The court continued the hearing regarding Mother's services for the sibling because the sibling's father appeared for the first time at this hearing and there was a concern about the sibling having no parent receiving services.

4	A.W.'s father did not appear at the hearing. His counsel waived his appearance.

11

probability that A.W. could be returned by the 12-month date. Mother visited A.W., but was habitually late. Otherwise, she made no progress with her case plan services. The caregiver was concerned that Mother continued to be under the influence and came to the caregiver's home without permission.

Since A.W. and her sibling were both under the age of three, minor's counsel argued that the court had discretion not to continue services past six months. Minor's counsel noted that A.W. and her sibling were doing well with their placement with A.W.'s relative.

Minor's counsel pointed out that Mother was arrested at the time of the detention incident for robbery and her case plan included a requirement that she avoid arrest. The criminal court gave her a second chance by not sentencing her to prison for the robbery charge. Yet, less than a month after the criminal court's decision, Mother was arrested again, this time for transporting methamphetamine and possession of a weapon. Mother failed to make progress with substance abuse treatment. She told the social worker several times that she was trying to enroll in programs, but she never did. She also told the social worker she had been clean since October 2020, yet the police report of the May 10, 2021 arrest documented Mother's admission that she continued to use methamphetamine daily. Counsel argued there was no indication mother would enroll in a substance abuse program and make progress to the extent that A.W. could be returned to her by the 12-month date.

Mother's counsel argued that mother had visited with A.W., which met the minimum standards even if the quality of the visitation was not what minor's counsel would like. Counsel referred to statements in the reports that Mother had met with a substance abuse specialist at least twice and made contact with multiple substance abuse recovery programs. He said she

was "doing her best to deal with" her housing and income barriers so she could reunify with A.W.

The court found that Mother had a substance abuse problem, not only with personal use, but was recently arrested for transporting drugs. Although Mother visited A.W., the court found by clear and convincing evidence that her participation in services was minimal at best and that she failed to make substantive progress with her plan. The court found that there was no substantial probability A.W. could be returned to Mother within 12 months. Therefore, the court did not continue Mother's reunification services. The court did not set a section 366.26 hearing for A.W. at that time, but confirmed a date for the 12-month hearing. Mother timely appealed.

DISCUSSION

I

*The Court Did Not Err in Declining Mother Further Services*

A.  *Guiding Legal Principles.*

Parents in dependency proceedings are entitled to receive reasonable services to facilitate family reunification. (*Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 69; *In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 876 (*Katelynn Y.*).) Reunification services for the parent of a child who was under three years of age on the date of initial removal are generally provided with a presumptive minimum of six months of services, but no longer than 12 months from the date the child entered foster care, unless the child is returned to the home of the parent. (§ 361.5(a)(1)(B); *In re M.F.* (2019) 32 Cal.App.5th 1, 21; *In re Jesse W.* (2007) 157 Cal.App.4th 49, 59 (*Jesse W.*).)[5]

_____

[5]     A child is "deemed to have entered foster care on the earlier of the date of the jurisdictional hearing held pursuant to [s]ection 356 or the date that is

13

At the end of the initial six-month period, if a child is not returned to parental custody and "the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan," the juvenile court may schedule a hearing under section 366.26 to select a permanent placement plan for the child. (§ 366.21, subd. (e)(3).) If, however, the court finds there is a "substantial probability" that the child "may be returned to his or her parent . . . within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing."[6] (*Ibid.*) This expedited statutory scheme recognizes that "time is of the essence" for very young children in the foster system and they require " 'a more timely resolution of a permanent plan because of their vulnerable stage of development.' " (*Tonya M. v. Superior Court*, *supra*, 42 Cal.4th at pp. 846, 847.)

In considering the court's factual findings, " '[w]e do not reweigh the evidence or exercise independent judgment, but merely determine if there are

60 days after the date on which the child was initially removed from the physical custody of his or her parent or guardian." (§ 361.49.)

[6]     Even if the six-month hearing is delayed, the juvenile court should only consider at each step the "probable developments in the period for which the services can be ordered. That is, the period for which services can be ordered and the period for which the impact of those services is to be prospectively evaluated should be coterminous. Thus, if at most four months remain until the next review hearing (i.e., the 12-month hearing or 18-month hearing), at most only four months of services can by law be ordered, and the juvenile court therefore should consider only what the impact of *those* four months of services would be on the parent and child, not whether another hypothetical two months of services beyond the next prospective hearing might have a different or additional impact." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 846.)

14

sufficient facts to support the findings of the trial court.' " (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 689 (*Kevin R.*).) "[W]e review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders." (*Id.* at pp. 688–689.)

The decision about whether to award additional reunification services up to 12 months, even if there is no substantial probability the child may be returned by that date, is discretionary. We review that decision for abuse of discretion. (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 179–181; *In re Alanna A.* (2005) 135 Cal.App.4th 555, 565; see also *Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 877.) "In exercising its discretion, the court has 'the ability to evaluate whether the parent will utilize additional services and whether those services would ultimately inure to the benefit of the minor.' [Citation.] We will not disturb the court's determination unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*Katelynn Y.*, at p. 881.)

B.    *Application.*

Here, there was substantial evidence to support the juvenile court's findings that Mother made no substantive progress with her court-ordered case plan and that there was no substantial probability A.W. could be returned to her by the 12-month date. After A.W. was detained, Mother initially engaged in an online outpatient drug treatment program, which she discontinued by the end of December 2020. She took one parenting class over the course of a couple of days. She visited the child, but was habitually late and never progressed to the point of being assessed for additional days or unsupervised visits. Despite numerous referrals, Mother never re-enrolled in a substance abuse program and did not follow-through with services to

15

connect her with secure housing.[7]  She said at one point that she had signed a lease for an apartment, but that apparently never came to fruition.  Mother continued to abuse drugs and engaged in criminal activity resulting in another arrest, in contradiction of her case plan.  Mother did not maintain stable housing thereafter.  Despite being informed by the social worker that her parental rights could be terminated if she did not participate in services, Mother did not do so.

Given the court's findings, the court was well within its discretion to decline to extend services for Mother.  "Where, as here, the court continues one parent's services and does not set a section 366.26 hearing, it retains discretion to terminate the other (nonreunifying) parent's services.  [Citations.]  The parent seeking additional services has the burden of showing such an order would serve the child's best interests."  (*Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881.)

Mother presented no affirmative evidence at the contested hearing and failed to establish that continuing her reunification services would serve A.W.'s best interests.  To the contrary, the evidence showed that A.W. was comfortable and thriving in her relative placement with her sibling.  The caregiver reported that A.W. showed signs of anxiety or stress after some visits with Mother.  Mother was not only habitually late to her visits with A.W., but she came to the caregiver's home without permission and the caregiver thought Mother was still under the influence.  The caregiver also

---

[7]  Mother reported that she previously participated in the McAlister program "a bunch of times" as well as Parentcare for drug treatment.  A program previously assisted her in finding low-income housing, which she lost after moving out of state in early 2019.

16

expressed concern for A.W.'s safety based on Mother's comments about taking the children and running away.

We are not persuaded by Mother's arguments that the juvenile court's authority to terminate family reunification services for one parent is limited to situations where the nonreunifying parent made no effort to reunify and participated in no services. It is true that the cases cited by Mother involved situations where the parent did not participate in offered services and did not visit the children. (*Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881; *Jesse W.*, *supra*, 157 Cal.App.4th at p. 56.) The language of the statute, however, does not include such a limitation. Rather, it requires the court to evaluate whether the parent "failed to participate *regularly* and make *substantive progress* in a court-ordered treatment plan." (§ 366.21, subd. (e)(3), italics added.) The plain language of the statute indicates that a juvenile court may determine by clear and convincing evidence that a parent failed to make substantive progress even if the parent made some minimal effort. As we explained in *Jesse W.*, the statutory scheme provides that "at each review hearing, the court must evaluate the efforts or progress toward reunification made by each parent individually by considering 'the extent to which *he or she* availed *himself or herself* to services provided.' " (*Jesse W.*, at p. 60.)

We also note that this was not the first time the Agency was involved in A.W.'s young life. Despite her prior contact with the Agency and the services offered in this case, Mother made no substantial progress in addressing the underlying issues that led to A.W.'s removal over the eight or nine months since she was detained. Mother's continued difficulties with substance abuse, housing and financial instability, and criminal activity demonstrate there was not a substantial probability A.W. could be returned to Mother's custody

17

by the 12-month review date. Therefore, we conclude the juvenile court did not abuse its discretion in declining to extend services for Mother.

## II

### *The Juvenile Court Properly Considered Minor's Request to Decline Continued Services for Mother*

Mother contends for the first time on appeal that minor's counsel did not file a petition under section 388, subdivision (c), to terminate Mother's services at the six-month review hearing and the court did not make the findings listed in section 361.5, subdivision (a)(2)(A)–(C). As a result, she contends she did not have adequate notice and was denied due process.

Minor contends the statutes cited by Mother apply to situations involving the request for an early termination of services and do not apply where the juvenile court is considering whether to exercise its discretion to extend services for the parent of a child under three years old after six months under the provisions of section 366.21, subdivision (e)(3). Minor also contends Mother forfeited the issue by failing to raise any procedural objection with the juvenile court.

We agree the issue is forfeited. We generally do not consider contentions raised for the first time on appeal. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1528 [argument not raised below is forfeited on appeal]; *Kevin R.*, *supra*, 191 Cal.App.4th at p. 686 [forfeiture applies in juvenile dependency litigation and is intended "to prevent a party from standing by silently until the conclusion of the proceedings"]; *In re A.S.* (2018) 28 Cal.App.5th 131, 151 [failure to object to the juvenile court forfeits the issue on appeal].) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."

(*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Had Mother objected, the juvenile court could have taken steps to remedy any procedural error.

In any event, Mother had notice of minor's request to terminate her services. She was present at the hearing on June 9, 2021 when minor's counsel made the oral motion. The court informed Mother that it was moving forward with minor's counsel's request and admonished her to stay in touch with both the Agency and her attorney. She was also present at the pre-trial hearing when the court confirmed the date for the contested hearing. Mother did not appear on the date originally set for the contested hearing. That hearing was briefly continued at the request of Mother's counsel. She did not appear at the next hearing and her counsel did not know why. Therefore, any error was harmless. (*In re Celine R.* (2003) 31 Cal.4th 45, 58, 60 [harmless error test applies in dependency matters].)

Even if Mother did not forfeit the issue, we agree with minor's interpretation of the statutory scheme and conclude the juvenile court properly considered minor's position on the issue of whether to continue Mother's services beyond the six-month period as part of its duties required under section 366.21, subdivision (e)(3). In reaching this conclusion, we independently consider and interpret the pertinent statutes. (*In re R.T.* (2017) 3 Cal.5th 622, 627 (*R.T.*).)

Section 361.5, subdivision (a)(2) states in relevant part, "Any motion to terminate court-ordered reunification services . . . *prior to* the hearing set pursuant to subdivision (e) of Section 366.21 for a child described by subparagraph (B) or (C) of paragraph (1) [of subdivision (a) of section 361.5, a child under three or a sibling group in which one sibling is under three], shall be made pursuant to the requirements set forth in subdivision (c) of Section 388. A motion to terminate court-ordered reunification services shall not be

19

required at the hearing set pursuant to subdivision (e) of Section 366.21 if the court finds by clear and convincing evidence one of the following:  [¶] (A)  That the child was removed initially under subdivision (g) of Section 300 and the whereabouts of the parent are still unknown.  [¶]  (B)  That the parent has failed to contact and visit the child.  [¶]  (C)  That the parent has been convicted of a felony indicating parental unfitness."  (Italics added.)

Section 388, subdivision (c)(1) states in relevant part that any party, including the dependent child "may petition the court, . . . *prior to* the hearing set pursuant to subdivision (e) of Section 366.21 for a child described by subparagraph (B) or (C) of paragraph (1) of subdivision (a) of Section 361.5 [a child under three or a sibling group in which one sibling is under three], to terminate court-ordered reunification services provided under subdivision (a) of Section 361.5" only if certain conditions exists, one of which is "(B) The action or inaction of the parent or guardian creates a substantial likelihood that reunification will not occur, including, but not limited to, the parent's or guardian's failure to visit the child, or the failure of the parent or guardian to participate regularly and make substantive progress in a court-ordered treatment plan."  (Italics added.)

As we described in section I.A., *ante*, section 366.21, subdivision (e)(3) provides the criteria a court must consider at a six-month review hearing to determine if it should extend services for a parent of a child under three:  "If the child was under three years of age on the date of the initial removal, or is a member of a sibling group described in subparagraph (C) of paragraph (1) of subdivision (a) of Section 361.5, and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 within 120 days.  If, however, the court finds

20

there is a substantial probability that the child, who was under three years of age on the date of initial removal or is a member of a sibling group described in subparagraph (C) of paragraph (1) of subdivision (a) of Section 361.5, may be returned to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing."

In considering the interplay of these statutes, we must "interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose." (*R.T.*, *supra*, 3 Cal.5th at p. 627.) " '[W]e do not consider . . . statutory language in isolation.' [Citation.] Instead, we 'examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts.' [Citation.] Moreover, we ' "read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " ' " (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043.)

When sections 361.5, subdivision (a)(2), and 388, subdivision (c)(1), are read as a whole, it is apparent that they contemplate early motions to terminate existing services within the presumptive minimum services period of either six months for children under age three or 12 months for children age three or older. The Legislature added these provisions in 2008 as part of a "major policy shift" away from the view that these timelines were maximum services periods (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2021) § 2.129[1], pp. 2-519–2-520 (Seiser & Kumli).) and to narrow the circumstances in which a juvenile court can exercise discretion to

21

set aside or change orders for reunification services before the conclusion of the minimum timeframes. (*M.C. v. Superior Court* (2016) 3 Cal.App.5th 838, 846–847 (*M.C.*).)

Minor contends the second sentence of section 361.5, subdivision (a)(2), which requires the court to make special findings if a motion to terminate reunification services is made at the six-month review hearing, should be interpreted within the context of this statutory framework, meaning it only applies to *early* motions to terminate services. This interpretation is consistent with the statutory scheme and gives effect to section 366.21, subdivision (e)(3), which provides different criteria for a court to consider in deciding whether to continue services beyond the statutory minimum services for the parent of a child under three. In other words, if a motion is brought to terminate services before the end of the statutory period, a moving party must comply with the requirements of sections 361.5, subdivision (a)(2) and 388, subdivision (c)(1). But once a parent receives reasonable services for the statutorily prescribed minimum period for a child under three, the juvenile court is required by section 366.21, subdivision (e)(3) to decide whether to continue those services after evaluating the parent's progress and the probability of whether the child can be returned to the parent.

The parties cite one published case addressing the interplay of section 361.5, subdivision (a)(2) with section 366.21, subdivision (e)(3). In *M.C.*, the appellate court determined the juvenile court erred in terminating reunification services before the end of the 12-month period without a section 388 petition. The children involved in that case were over three at the time of detention.[8] (*M.C., supra,* 3 Cal.App.5th at pp. 840, 849.) Although the

---

[8] Section 361.5, subdivision (a)(2) states in relevant part, "Any motion to terminate court-ordered reunification services prior to the hearing set

issue was not directly before it, the court commented in a footnote that section 366.21, subdivision (e)(3), "allowing for the setting of a 366.26 hearing on a finding of failure to participate in and make progress in a treatment plan, is not inconsistent with the Legislature's intent in amending section 361.5 or, specifically, with the language of subdivision (a)(2). Section 361.5 provides for only six months of services if the child is under three or for an entire sibling group if one of the group is under three. (§ 361.5, subd. (a)(1)(B) [child under three], (C) [entire sibling group].) Accordingly, under the statutory scheme, the specified six-month period of services will not be 'terminated' at the six-month hearing on the setting of a 366.26 hearing; rather, the specified period of time for services will simply have ended. Thus, the six-month hearing termination provisions set forth in section 361.5, subdivision (a)(2), can be harmonized with the provisions of section 366.26, subdivision (e), allowing for the setting of a section 366.26 hearing at the six-month hearing." (*M.C.*, at p. 848, fn. 3.)

We agree with the *M.C.* court's interpretation. Although counsel and the court referred to "termination" of Mother's services, the court's order is more accurately viewed as an order *denying an extension* of her services. Here, Mother received reunification services for the minimum six-month period, but, as the court found by clear and convincing evidence, she made no substantive progress with her case plan and there was no probability A.W. would be returned by the 12-month date. Therefore, the court appropriately declined the Agency's recommendation to extend her services and they

---

pursuant to subdivision (f) of Section 366.21 for a child described by subparagraph (A) of paragraph (1) [of subdivision (a) of Section 361.5, a child three or older] . . . shall be made pursuant to the requirements set forth in subdivision (c) of Section 388."

23

expired. The court did not immediately set a section 366.26 hearing for Mother, but confirmed the 12-month review date, at which time it would consider Father's services.

Viewing the statutes in this way, any of the requirements under section 361.5, subdivision (a)(2) for a motion to "terminate" existing services do not apply to the court's consideration of whether to continue services for a parent who has reached the end of the minimum service period for a child under three. It also does not matter whether the request to decline further services was made by the minor or the Agency, since section 366.21, subdivision (e)(3) requires the court to undertake this evaluation of the parent's progress at the six-month hearing for children under three.[9]

Mother's statutory interpretation, which would require a section 388 petition or additional findings by the juvenile court under section 361.5, subdivision (a)(2) at a six-month review hearing for children under three would render section 366.21, subdivision (e)(3) ineffective. It would also undermine the legislative intent to provide expeditious resolution of these cases for very young children.

For all these reasons, we reject Mother's claim that the court erred in considering minor's request not to continue Mother's reunification services.

### III

*The Court Did Not Abuse Its Discretion in Denying a Continuance*

Mother finally contends the juvenile court erred in failing to grant her attorney's request for a continuance when she failed to appear for the contested hearing regarding her reunification services. We conclude there was no abuse of discretion.

---

[9]    This reading of the statutes is also consistent with a noted commentary on dependency law. (Seiser & Kumli, *supra*, § 2.140[1], p. 2-584.)

24

Continuances are generally discouraged in dependency cases (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604) and may be granted "only upon a showing of good cause" and provided that it is not "contrary to the interest of the minor." (§ 352, subd. (a).) "We review the court's ruling on a continuance request for an abuse of discretion." (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1481.)

In this case, Mother was present telephonically for both the hearing where minor's counsel requested a contested hearing on the issue of continuing Mother's services and for the pre-trial conference confirming the date of the hearing on July 26, 2021. Mother did not appear at the scheduled July 26, 2021 hearing despite two attempts by the court to contact her. The court granted her attorney's request for a two-day continuance until July 28, 2021 so the court could consider matters related to both A.W. and her sibling and so that Mother could attend the hearing.

Two days later, however, Mother again failed to appear for the contested hearing. The court made three unsuccessful attempts to reach Mother. After the court granted a continuance at the request of the sibling's father, Mother's counsel requested another 30-day continuance of the contested hearing to allow consideration of A.W.'s case and her sibling's case on the same track. Counsel stated that he did not know why Mother did not respond to the court's call. The court found that Mother had notice of the hearing, that the court made three attempts to contact her, and that she "voluntarily absented herself from the proceedings." Therefore, the court denied the continuance request and proceeded with the hearing.

Based on this record, we find no abuse of discretion. An "unjustified failure to appear at a duly noticed hearing reflects a parent's choice not to attend. [Citation.] A court may properly treat this choice as a waiver of the

25

right to be present at that hearing and of the benefits of being present." (*In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1132.)  There is no indication another 30-day continuance of this matter was in the best interests of A.W.

DISPOSITION

The July 28, 2021 order is affirmed.


IRION, J.

WE CONCUR:



HUFFMAN, Acting P. J.



DATO, J.


26