[No. D061670. Fourth Dist., Div. One. Sept. 28, 2012.]

In re KATELYNN Y., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
JENNIFER M., Defendant and Appellant.

874

**COUNSEL**

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

Neale B. Gold, under appointment by the Court of Appeal, for Minor.

**OPINION**

**HALLER, Acting P. J.**—Jennifer M. appeals a juvenile court order terminating her reunification services as to her minor daughter, Katelynn Y., under Welfare and Institutions Code section 388, subdivision (c)(1)(B),[1] which allows for early termination of services if the inaction of a parent creates a substantial likelihood reunification will not occur. Jennifer contends the court erred, as a matter of law, by terminating her services when Katelynn's father, Christopher Y., was still receiving services with the goal of reunification, and the court did not set a section 366.26 selection and implementation hearing. Alternatively, Jennifer contends the court abused its discretion by terminating her reunification services while offering services to Christopher. We affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

Jennifer and Christopher (together, the parents) each have a history of methamphetamine use and domestic violence. In December 2010, the San Diego County Health and Human Services Agency (Agency) received a referral that Jennifer left five-year-old Katelynn with the maternal grandmother for 12 days, and the parents' whereabouts were unknown. Jennifer

---

[1] Statutory references are to the Welfare and Institutions Code.

had relapsed on drugs and said she intended to seek treatment. The maternal grandmother acquired temporary guardianship of Katelynn later that month.

While in the maternal grandmother's care, Katelynn tried to inappropriately touch a three-year-old child. The maternal grandmother took Katelynn to a therapist, where she disclosed Jennifer and Christopher had been sexually molesting her on a regular basis. Katelynn also said she observed Jennifer and her friend Matt having sex. Agency filed a petition in the juvenile court under section 300, subdivision (c) alleging Katelynn had suffered serious emotional damage, including severe anxiety, depression, withdrawal and outwardly aggressive behavior toward herself and others. The court detained Katelynn in out-of-home care and issued a temporary restraining order protecting her from both parents.

At the jurisdiction and disposition hearing, the court sustained the allegations of the petition, declared Katelynn a dependent, removed her from parental custody and placed her with the paternal grandparents. The court ordered reunification services for the parents, including parenting education, counseling with a therapist specializing in sexual abuse and substance abuse treatment.

During the next six months, Jennifer did not participate in services, had no contact with the social worker and requested no visits with Katelynn. Christopher actively participated in services while he was incarcerated for three months. After his release, he enrolled in drug treatment, but was arrested for violating the conditions of his parole by leaving the program. The social worker recommended the parents receive six more months of reunification services.

Three days before the scheduled six-month review hearing, Katelynn's counsel filed a petition for modification under section 388, subdivision (c) seeking to have the court terminate the parents' services and set a section 366.26 selection and implementation hearing. The petition alleged Katelynn would benefit from the requested modification because her paternal grandparents, with whom she was placed, were committed to providing her with long-term care and she deserved permanency and stability in her life. Agency concurred in the request to terminate the parents' services.

In an addendum report, Agency changed its recommendation as to Christopher and asked the court to continue his services. Christopher had begun drug treatment, was cooperating with requests to drug test and was participating in a sexual abuse perpetrators group. Agency did not change its recommendation to terminate Jennifer's services.

The court held a contested hearing on Katelynn's section 388, subdivision (c) petition. Katelynn's counsel withdrew the request to terminate Christopher's services. After considering the evidence and arguments of counsel, the court terminated Jennifer's reunification services under section 388, subdivision (c)(1)(B), but continued Christopher's services for six months, finding he had made some progress with the provisions of his case plan. The court continued Katelynn's placement with the paternal grandparents.

## DISCUSSION

### I

### *The Court Did Not Err, as a Matter of Law, by Terminating Jennifer's Reunification Services Under Section 388, Subdivision (c)(1)(B)*

Jennifer contends the court erred, as a matter of law, by terminating her reunification services under section 388, subdivision (c)(1)(B) while continuing Christopher's services. She asserts the statutory scheme prohibits the court from terminating a parent's services unless a section 366.26 hearing is set, and this can occur only if reunification efforts have failed as to *both* parents. We review this issue de novo. (*In re Alanna A.* (2005) 135 Cal.App.4th 555, 562 [37 Cal.Rptr.3d 579] [where facts are not disputed, the effect or legal significance of those facts is question of law to be reviewed de novo].)

### A

When a dependent child is removed from parental custody, the court generally orders services for the family to facilitate its reunification. (§ 361.5, subd. (a); *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 [73 Cal.Rptr.2d 793].) Reunification services for a parent of a dependent child over the age of three are ordinarily limited to 12 months, but may be extended to the 18-month date. (§ 361.5, subd. (a).) A parent, however, has no entitlement "to a prescribed minimum period of services." (*In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1243 [34 Cal.Rptr.3d 288].) Instead, the court has discretion to determine whether continued services are in the best interests of the minor, or whether services should be terminated at some point before the applicable statutory period has expired. (*Ibid.*) In this regard, any party to a dependency proceeding, including the child, may petition the court to terminate reunification services early under certain conditions, such as when the

action or inaction of the parent creates a substantial likelihood that reunification will not occur because the parent has failed to visit the child or participate regularly and make substantive progress in a court-ordered treatment plan.[2] (§ 388, subd. (c)(1)(B); see § 361.5, subd. (a)(2); Cal. Rules of Court, rule 5.570(e)(4); *In re Y.M.* (2012) 207 Cal.App.4th 892, 917 [144 Cal.Rptr.3d 54].)

## B

Jennifer concedes she did not regularly visit Katelynn or participate and make substantive progress in her court-ordered treatment plan. Nevertheless, she claims that under the clear language of section 388, subdivision (c)(1)(B), the court can only terminate services if it finds reunification with both parents will not occur, and here, reunification between Christopher and Katelynn was still a possibility.

■ In deciding whether to extend or terminate reunification services, the court does not consider the parents as one unit, but instead treats each of them on his or her own merits. "Indeed, at each review hearing, the court must evaluate the efforts or progress toward reunification made by each parent individually by considering 'the extent to which *he or she* availed *himself or herself* to services provided.' [Citations.] Although the purpose of services is to facilitate a child's return to parental custody, reunification often involves one, but not both, parents. [¶] . . . Because reunification services are a benefit, not a constitutional entitlement, the juvenile court has discretion to terminate those services at any time, depending on the circumstances presented. [Citation.] In deciding whether to terminate the services of one parent who has failed to participate or make progress toward reunification, the court is not constrained by a consideration of the other parent's participation in services." (*In re Jesse W.* (2007) 157 Cal.App.4th 49, 60, 59 [68 Cal.Rptr.3d 435] [at six-month review hearing involving child under the age of three, court is not required to continue services for one parent when reunification efforts continue for the other parent and court does not set a § 366.26 hearing]; accord, *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 651 [91 Cal.Rptr.3d 193] [during reunification period, court's offer of continued services to one parent is not based solely on other parent's participation in services]; *In re Alanna A., supra*, 135 Cal.App.4th at p. 559 [court has discretion at 12-month review hearing involving child over the age of three to terminate reunification for one parent while continuing services to the other parent to the 18-month hearing].)

---

[2] The court may terminate services under this provision only if it finds reasonable services have been offered or provided. (§ 388, subd. (c)(3).) Jennifer does not claim the services she was offered were not reasonable.

Moreover, the language in section 388, subdivision (c)(1)(B) refers to the "action or inaction of the parent," and the "failure of the parent" to visit the child or participate regularly and make substantive progress in a court-ordered treatment plan. The Legislature's use of the singular "parent" under-scores its intent to allow services to be provided or continued for one parent but not the other. (*In re Jesse W., supra*, 157 Cal.App.4th at p. 59.) This interpretation is entirely consistent with the notion that "at no time during the reunification process does the court's offer of continued services to one parent depend solely on the efforts of the other parent." (*Id.* at p. 60.) It also furthers the legislative determination that, in some circumstances, efforts to continue reunification for a parent do not serve and protect a minor's best interests. (*Id.* at p. 59.) Because Jennifer's inaction created a substantial likelihood that reunification with Katelynn would not occur, section 388, subdivision (c)(1)(B) allowed the court to terminate Jennifer's services while still offering services to Christopher.

## C

■ Under section 388, subdivision (c)(4), "[i]f the court terminates reunification services, it shall order that a hearing [under] [s]ection 366.26 be held within 120 days." Citing this provision, Jennifer asserts the court violated the mandate of the statute because it terminated her reunification services without setting a section 366.26 hearing. However, we believe a fair reading of section 388, subdivision (c)(4), together with subdivision (c)(1)(B), and in light of the legislative history and statutory scheme as a whole, compels the conclusion that the court retains discretion to terminate services to one parent before the applicable statutory period has expired even if it does not set a section 366.26 hearing because the other parent is still receiving services.

■ "A statute should not be given a literal meaning if to do so would create unintended, absurd consequences. Instead, 'intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment.' [Citations.]" (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 196 [136 Cal.Rptr.3d 813].) By amending sections 361.5 and 388, subdivision (c), the Legislature codified existing case law that had allowed the court to terminate reunification services before the prescribed time period expired (*In re Aryanna C., supra*, 132 Cal.App.4th 1234; *In re Derrick S.* (2007) 156 Cal.App.4th 436, 448–449 [67 Cal.Rptr.3d 367]; *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872 [101 Cal.Rptr.2d 187]), and provided the vehicle

by which a party could seek to have services terminated early. (See §§ 361.5, subd. (a)(2), 388, subd. (c); Stats. 2008, ch. 457, §§ 1.5, 2.) At the same time, the amended statute limited the court's discretion to terminate services early by requiring a hearing and a finding by clear and convincing evidence that certain circumstances exist, including the substantial likelihood reunification will not occur with a parent. (§ 388, subd. (c)(1)(B), (3).) Nothing in the legislative history restricts the court's ability to terminate services only when *both* parents have failed at reunification. Indeed, at the time sections 361.5 and 388, subdivision (c) were amended, case law allowed the court to terminate one parent's services even when it did not set a hearing under section 366.26. (See, e.g., *In re Jesse W., supra,* 157 Cal.App.4th at pp. 59–60; *In re Alanna A., supra,* 135 Cal.App.4th at p. 565.) The Legislature is presumed to be aware of existing laws when it enacts or amends a statute. (*In re B. J. B.* (1986) 185 Cal.App.3d 1201, 1206–1207 [230 Cal.Rptr. 332].)

We decline to adopt an interpretation of section 388, subdivision (c) that would nullify the court's well-established authority to terminate one parent's services without setting a section 366.26 hearing because the other parent is still being offered reunification services. Jennifer's interpretation would result in the absurd consequence of giving her a benefit—further reunification services—to which she is not otherwise entitled. Given Jennifer's total lack of effort to participate in reunification services when she had the opportunity, her attempt to bootstrap the court's inability to set a section 366.26 hearing into her right for more services is manifestly unsound. (See *In re Derrick S., supra,* 156 Cal.App.4th at p. 448 [presumption is against pointless construction of any statute].)

Moreover, use of the word "shall" in section 388, subdivision (c)(4) is not inconsistent with our conclusion that the court has the authority to terminate one parent's services even though it does not set a section 366.26 hearing. " '[S]hall' " does not necessarily indicate a mandatory requirement. (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1419 [286 Cal.Rptr. 239].) Where, as here, a statute does not provide any consequence for noncompliance, and there is no indication the Legislature intended to strip the court of jurisdiction, the word "shall" is to be considered directory rather than mandatory. (*In re C. T.* (2002) 100 Cal.App.4th 101, 111 [121 Cal.Rptr.2d 897], italics omitted; *In re M.F.* (2008) 161 Cal.App.4th 673, 680 [74 Cal.Rptr.3d 383].) The designations " 'mandatory' " and " 'directory' " do not refer to whether a particular statutory requirement is " 'permissive' " or " 'obligatory,' " but instead simply denote whether the failure to comply with a particular procedural step will invalidate the governmental action to which

the procedural requirement relates. (*In re Charles B.* (1986) 189 Cal.App.3d 1204, 1209 [235 Cal.Rptr. 1]; see *In re C. T.*, at p. 111.) In this regard, "[t]he lack of strict compliance with [a statute], in the absence of prejudice, does not render the subsequent proceedings void. [Citation.]" (*In re Melinda J.*, at p. 1419; see *In re M.F.*, at p. 680.)

Here, section 388, subdivision (c)(4) provides no consequence for noncompliance, and there is no suggestion the Legislature intended to strip the court of its jurisdiction if it does not—and cannot—set a section 366.26 hearing because it has terminated reunification services for one parent but not the other. Because the language in section 388, subdivision (c)(4) is directory and not mandatory, the court was not divested of the authority to terminate Jennifer's reunification services under section 388, subdivision (c)(1)(B) without also setting a section 366.26 hearing.[3]

■ We are mindful that the juvenile dependency laws must be liberally construed to carry out their purposes, including the need to act in the minor's best interests. (§ 202.) Interpreting the statute as requiring the court to continue services for Jennifer, who has no interest in reunifying with Katelynn, simply because Christopher has made some effort at reunification, would defeat the purpose of the dependency proceedings by ignoring Katelynn's best interests and elevating form over substance. (See *In re Albert B.* (1989) 215 Cal.App.3d 361, 372 [263 Cal.Rptr. 694]; *In re Andrew L.* (2011) 192 Cal.App.4th 683, 690 [121 Cal.Rptr.3d 664].) ■ "In an era of dwindling resources, the state may reasonably focus its reunification efforts on those families most likely to be reconciled." (*In re Gabriel K., supra,* 203 Cal.App.4th at p. 196.) Because the goal was no longer reunification between Jennifer and Katelynn, the court could, as a matter of law, terminate Jennifer's reunification services under section 388, subdivision (c).

## II

*The Court Did Not Abuse Its Discretion by Terminating Jennifer's Reunification Services*

Jennifer contends that even if the court could, as a matter of law, terminate her services under section 388, subdivision (c), it abused its discretion by

---

[3] We note Jennifer does not claim she will participate in services during the next six months, and given her "abysmal record of failure at reunification" (*In re Aryanna C., supra,* 132 Cal.App.4th at p. 1241), the likelihood of reunification is virtually nonexistent. Thus, Jennifer cannot show she was prejudiced by the court's order terminating her services without also setting a section 366.26 hearing.

doing so. Conceding she did not participate in court-ordered services during the first six months of reunification, Jennifer nevertheless asserts "it did not make sense" for the court to terminate her services because (1) Christopher was still receiving services with the goal of reunification and (2) there was some evidence she was attempting to resolve her substance abuse issues.

### A

■ Where, as here, the court continues one parent's services and does not set a section 366.26 hearing, it retains discretion to terminate the other (nonreunifying) parent's services. (See *In re Jesse W., supra,* 157 Cal.App.4th at pp. 65–66; *In re Alanna A., supra,* 135 Cal.App.4th at p. 566.) The parent seeking additional services has the burden of showing such an order would serve the child's best interests. (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227 [78 Cal.Rptr.3d 91]; *In re Gabriel K., supra,* 203 Cal.App.4th at p. 197; *In re Alanna A.,* at p. 565.) In exercising its discretion, the court has "the ability to evaluate whether the parent will utilize additional services and whether those services would ultimately inure to the benefit of the minor." (*In re Jesse W.,* at p. 66.) We will not disturb the court's determination unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. When two or more inferences reasonably can be deduced from the facts, we have no authority to reweigh the evidence or substitute our judgment for that of the juvenile court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

### B

Here, Jennifer made no effort to avail herself of services offered and thus made no progress toward alleviating or mitigating the causes for Katelynn's removal from her custody. Significantly, Jennifer chose to have no contact with Katelynn for more than six months. "The goal of family reunification is not served when a parent has shown no interest in reunifying." (*In re Jesse W., supra,* 157 Cal.App.4th at p. 60.) Offering Jennifer six more months of services would be " 'an unwise use of governmental resources.' " (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876].) Under these circumstances, the court could properly find Jennifer would not utilize additional services, nor would those services ultimately inure to Katelynn's benefit. (*In re Jesse W.,* at p. 66.)

## DISPOSITION

The order is affirmed.

O'Rourke, J., and Aaron, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 2012, S206263.