Filed 12/9/13  In re Kayla W. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re KAYLA W., a Person Coming Under the Juvenile Court Law. | |
| | D064156 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J517647) |
| v. | |
| ELLIOT W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael J. Martindill, Referee.  Affirmed.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

At the 12-month review hearing in the juvenile dependency case of child Kayla W., the court terminated reunification services for her father, Elliot W., and continued reunification services for her mother, Renee H.[1] Elliot appeals, contending the court failed to consider whether it was in Kayla's best interests to continue his services. We affirm.

## THE FIRST DEPENDENCY

In March 2009, Kayla was born. In April, the parents refused referrals to services during an investigation into a report of domestic violence. In May, Renee obtained a three-year domestic violence restraining order against Elliot. In October, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition based on Kayla's exposure to domestic violence between the parents. Elliot denied any violence, although he was a documented gang member with a violent history. Kayla was detained first in a foster home; then with Renee, on condition she have no contact with Elliot; and then again in a foster home. The court ordered supervised visits for Elliot and voluntary services for the parents. In November, the court made a true finding on the petition.

One week after the true finding, there was another incident of domestic violence. Elliot was arrested and jailed and continued to deny he was violent. In December 2009, he made his first court appearance. The court appointed counsel for him and ordered

---

1    We refer to Elliot and Renee together as the parents.

supervised visits to begin when he was released from jail. Elliot was released near the end of December.

In January 2010, Kayla was placed with a maternal aunt. The court gave the Agency discretion to allow the parents unsupervised visits with notice to Kayla's counsel, overnight visits with the concurrence of Kayla's counsel and a 60-day trial visit with the concurrence of Kayla's counsel and an ex parte order. The court ordered reunification services for the parents. Elliot's case plan included individual therapy, a domestic violence program and a parenting course. In February, Kayla was removed from the aunt's home and returned to the previous foster home.

In March 2010, Elliot was arrested after pushing Renee. In July, he was arrested after threatening to shoot her. He denied that incident had occurred. In September, the court terminated Elliot's services. By that time, he had just begun a domestic violence program and had not begun any other services. He had visited Kayla only once and had not kept in contact with the Agency. In December, Elliot was arrested, jailed and charged with various offenses, including inflicting corporal punishment on a spouse and possessing cocaine for sale.

In February 2011, Kayla was placed with Renee. In April, the court awarded Renee sole legal and physical custody, allowed Elliot supervised visitation and terminated dependency jurisdiction.

THE SECOND DEPENDENCY

In March 2012, the Agency filed a two-count dependency petition for then three-year-old Kayla. The first count alleged the family home was filthy and unsanitary. The

3

second count alleged Renee used marijuana, Kayla was previously exposed to domestic violence and Elliot failed to protect Kayla. Kayla was detained at Polinsky Children's Center and then in her previous foster home. Elliot's whereabouts were unknown. During its investigation, the Agency received information that he had been living with Renee and Kayla. Between early 2011 and mid-2012, he had been violent toward Renee on at least two occasions and had been arrested at least twice.

In May 2012, the court dismissed the first count and entered a true finding on the second count of the petition. The court ordered Kayla placed in foster care and ordered reunification services for the parents. Elliot's case plan included a domestic violence program, a parenting course and substance abuse testing as well as supervised visits. In July, Kayla was moved to the home of the maternal grandmother. That month, Elliot finally responded to the Agency's attempts to contact him; he called the social worker from Renee's telephone.

In October 2012, Elliot was arrested on various charges, including possessing a controlled substance. In December, the parents were arrested together, Elliot on an outstanding warrant and Renee for being under the influence of a controlled substance. Later that month, at the six-month review hearing, the court found that Elliot had not made substantive progress in his case plan, but continued his services as well as Renee's. In January 2013, Elliot was arrested and jailed on charges including robbery, possessing a controlled substance and carrying a loaded firearm in a public place. He was sentenced to two years in prison.

4

As in the previous dependency, Elliot failed to stay in contact with the Agency and failed to participate in services. The social worker sent him a prison parenting package, but he did not complete and return the enclosed forms. Elliot had only two visits with Kayla, one in August 2012 and one in October. Renee, on the other hand, participated in services and progressed to unsupervised visitation. She planned to be a single parent rather than continuing her relationship with Elliot upon his release.

At 12-month review hearing in June 2013, the court terminated Elliot's services, continued Renee's services and set an 18-month review hearing. In terminating Elliot's services, the court stated that it was his responsibility to stay out of custody as "a fundamental first step" in the reunification process. (*In re Christopher A*. (1991) 226 Cal.App.3d 1154, 1162.) The court noted that Elliot had been arrested within two months of the six-month review hearing; he would still be in prison at the 18-month date; and he had not taken reasonable steps to participate in services.

## DISCUSSION

"Where, as here, the court continues one parent's services and does not set a [Welfare and Institutions Code] section 366.26 hearing, it retains discretion to terminate the other (nonreunifying) parent's services. (See *In re Jesse W*. [2007] 157 Cal.App.4th [49,] 65-66; *In re Alanna A*. [2005] 135 Cal.App.4th [555,] 566.) The parent seeking additional services has the burden of showing such an order would serve the child's best interests. (*In re William B*. (2008) 163 Cal.App.4th 1220, 1227; *In re Gabriel K*. [2012] 203 Cal.App.4th 188[,] 197; *In re Alanna A*., at p. 565.) In exercising its discretion, the court has 'the ability to evaluate whether the parent will utilize additional services and

5

whether those services would ultimately inure to the benefit of the minor.' (*In re Jesse W.*, at p. 66.) We will not disturb the court's determination unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. When two or more inferences reasonably can be deduced from the facts, we have no authority to reweigh the evidence or substitute our judgment for that of the juvenile court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)" (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 881.)

Elliot failed to meet his burden of proving it was in Kayla's best interests to continue his services. In the juvenile court, his counsel presented no evidence on that issue. Rather, counsel simply argued: "It certainly does not prejudice the Agency to continue offering services to [Elliot], should he be able to avail himself of any services while in custody. [¶] . . . [¶] With respect to Kayla, I would note that it is always in the minor's best interest to have two parents who have engaged in as many services as possible . . . ."

Elliot meritlessly contends that the court ignored this argument. The court listened to counsel's argument and indicated it had read the reports that were admitted into evidence. In the absence of any contrary indication in the record, we presume the court was aware of the law and applied it properly. (*In re S.B.* (2009) 174 Cal.App.4th 808, 812-813.) Here, the record contains no such contrary indication.

Citing *In re Alanna A.*, *supra*, 135 Cal.App.4th 555, Elliot argues that where the nonreunifying parent is likely to have continued contact with the child, continued services will usually be in the child's best interests. In that case, this court concluded that

6

there was no abuse of discretion in terminating the father's services while continuing the mother's services. (*Id*. at pp. 559, 565-566.) In the instant case, during the course of two dependencies, Elliot showed virtually no interest in participating in services and little interest in visiting Kayla. He continued his violent behavior and continued to deny that behavior. "In deciding whether to terminate the services of one parent who has failed to participate or make progress toward reunification, the court is not constrained by a consideration of the other parent's participation in services." (*In re Jesse W., supra,* 157 Cal.App.4th at p. 60.) The court did not abuse its discretion by terminating Elliot's services.

DISPOSITION

The order is affirmed.

HALLER, Acting P. J.

WE CONCUR:


McDONALD, J.


IRION, J.

7