Filed 11/17/22  Margaret O. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARGARET O., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES. <br><br> Real Party in Interest. | F084891 <br><br> (Super. Ct. No. 21CEJ300345-1) <br><br><br> **OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Kimberly J. Nystrom-Geist, Judge.

Juvenile Law Center and Lusine M. Vardanova for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Carlie M. Flaugher, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Detjen, J. and Snauffer, J.

Margaret O. (mother) is the biological maternal grandmother and adoptive mother of now 13-year-old M.O., the subject of these writ proceedings. On August 23, 2022, the juvenile court conducted a six-month review hearing under Welfare and Institutions Code section 366.21, subdivision (e)(1)[1] combined with a hearing under section 388, which allows for the early termination of reunification services. (§ 388, subd. (c)(1).) The juvenile court terminated mother's reunification services and set a section 366.26 hearing on December 14, 2022. Mother seeks an extraordinary writ (Cal. Rules of Court, rules 8.450–8.452), contending the juvenile court erred in denying her request to continue the hearing and in terminating reunification services. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Twelve-year-old M.O. was taken into protective custody in September 2021 by the Fresno County Department of Social Services (department) after she disclosed her uncle had been sexually molesting her since she was six years of age. The sexual abuse included inappropriate touching over and under her clothing, kissing, oral copulation and digital penetration.

M.O. was adopted by her maternal grandparents, mother and Victor O., when she was two years of age. In September 2021, M.O. was living with mother and Victoria O., her biological aunt and legal sister, and Victoria's minor children. Victor was deceased. The uncle is the father of one of Victoria's minor children and a frequent visitor to the home. M.O.'s biological mother, Christina O., lived at a different residence with M.O.'s siblings. The department placed M.O. in foster care.

The department filed a dependency petition on M.O.'s behalf, alleging she was a minor described under section 300, subdivisions (b)(1) (failure to protect), (c) (serious emotional damage) and (d) (sexual abuse) because mother knew or reasonably should have known about the sexual abuse because M.O. exhibited behavior consistent with

---

[1] Statutory references are to the Welfare and Institutions Code.

emotional abuse, such as cutting, and that even after M.O. disclosed the sexual abuse to her, she accused her of lying and attempted to make her feel guilty for exposing the uncle.

The juvenile court ordered M.O. detained pursuant to the petition and offered mother parenting classes and a mental health evaluation and recommended treatment and set a jurisdictional/dispositional hearing (combined hearing) for October 28, 2021. The court did not order visitation, finding it would be detrimental to M.O.

On October 28, 2021, the juvenile court vacated its detriment finding and ordered the department to arrange intensive therapeutic visits for mother with M.O. The court ordered the department to offer mother a domestic violence evaluation and recommended treatment and found good cause to continue the hearing to January 5, 2022.

On January 5, 2022, the juvenile court continued the combined hearing and conducted it as a contested hearing on February 10, 2022. The court ordered mother to complete a parenting class, mental health and domestic violence assessments and any recommended treatment and a risk assessment. The court ordered supervised visitation once per week, granted the department discretion to advance visits to unsupervised and set a six-month review hearing for August 10, 2022.

Mother and M.O. had their first intensive therapeutic visit on January 12, 2022, and visited two additional times in January. The goals set for the visits were for mother to communicate appropriately with M.O. and to show her empathy. The first visit was held virtually and M.O. began to cry and stated that she wanted to hug mother and that she missed her. Mother did not respond. After M.O. repeated her statements, mother said she wanted to hug M.O. too. M.O. kept the conversation going by talking about how much she missed mother's cooking, her favorite books and her family members. The visitation coach had to advise mother to be more communicative. At the end of the initial visit, M.O. cried and said, " 'I miss you mom!' " Mother responded, " '[Y]ou knew

sooner or later you were going to leave. Stop crying.' " During the visits, it was reported that mother would not speak to M.O. unless she asked a question.

During an in-person visit on February 16, 2022, M.O. became emotional talking about her family members. Mother stated, " 'It is your fault we are here. I am getting old[2] and I cannot do a lot.' " When the visitation coach redirected mother, she stated, " 'Well if I cannot say what I want, then I will not speak.' " She added, " 'If you want me to sit in jail, I will. I am not a liar. I am old and I cannot do everything that is asked to get you home.' " After the visit, M.O. disclosed to the visitation coach that she felt scared and did not want to live with mother but just visit her. The visitation coach expressed her concerns to the social worker that mother was unable to show M.O. empathy and shut down when redirected. The following day, the care provider told the social worker M.O. was very upset after the visit and stated mother was " 'mean' " and she felt scared. She did not want to continue visiting mother and said mother kept whispering in her ear. M.O. told the social worker mother whispered, " 'You need to start telling the truth.' " M.O. began refusing visits on February 23, 2022.

On July 12, 2022, the department filed a modification petition under section 388 (section 388 petition), asking the juvenile court to terminate reunification services at the six-month review hearing because M.O. no longer wanted to visit mother. In addition, the department did not believe mother was able to provide M.O. a safe and stable environment. The court set a hearing on the section 388 petition for August 10, 2022.

By the six-month review hearing, mother had completed a parenting class and was assessed for mental health and domestic violence services. She was not referred for mental health treatment but it was recommended she complete a 52-week child abuse intervention program. On March 3, 2022, mother was notified to contact Alternative Health Consultants to enroll in the child abuse intervention class. She was given a virtual

---

**2**  Mother was 66 years old.

class but was not successful in enrolling. On July 18, 2022, the social worker attempted unsuccessfully to contact mother. On July 21, 2022, the social worker left mother a voice message informing her a meeting would be set up to help her enroll.

In its report for the six-month review hearing, the department recommended the juvenile court terminate mother's reunification services. Although she completed some services, she blamed M.O. for the circumstances requiring her removal and had not demonstrated she could protect her. In addition, M.O. was scared of her and refused to visit with her.

Mother appeared on August 10, 2022, represented by attorney Brenda Hook from the Juvenile Law Center who was standing in for Lusine Vardanova, also from the Juvenile Law Center and assigned mother's case. Hook advised the juvenile court that mother requested to set the matter for a contested hearing. When the court inquired when Ms. Vardanova would return from her vacation, Hook stated, "I believe next week." She clarified, "I just know this is her last week of vacation. I assume she will start next week."

The juvenile court set a contested six-month review hearing to be conducted along with a hearing on the department's section 388 petition for August 23, 2022. The court ordered the attorneys to submit their statements of contested issues and witness lists no later than August 17, 2022, along with any questions for M.O. should she be called as a witness. The court required the questions in advance so the attorneys could "lodge any objections to the form of the question without having to cause [M.O.] a great discomfort which kids have when attorneys speak up loudly to object, which is appropriate for the attorneys but difficult for kids. And under the circumstances that are set forth in the report, there clearly would be detriment to [M.O.] if the [c]ourt did not require this step for her safety."

Mother appeared with Vardanova on August 23, 2022. Vardanova requested a continuance, explaining there was a mix-up by her office. The matter was set for trial

5.

while she was on a two-week vacation out of country. The statement of contested issues was due on August 17, the day she returned. She was not notified the matter was set for trial and she did not discover it until the previous Friday afternoon when she was reviewing her emails and noticed discovery was sent by the department. When she checked their system, she realized the matter was set for trial on August 23. Although she was able to submit a statement of contested issues, she was not prepared to proceed to trial. Minor's counsel objected to a continuance. M.O. was very stressed about the prospect of having to testify and relieved when minor's counsel told her no one had submitted questions for her and she would not have to testify. She was concerned about causing her additional stress if the hearing were continued. County counsel also objected, pointing out that the Juvenile Law Center as a whole rather than a specific attorney was appointed to represent mother and that Hook requested the contested hearing and was advised of the court's requirements.

Vardanova asked if she could submit questions for M.O. to minor's counsel and have minor's counsel interview M.O. and provide her answers. She stated mother should not have to suffer for her mistake.

The juvenile court denied the request for a continuance, explaining,

> "[W]e are a … greatly impacted department.… The next available short-cause matter is actually out to November 16th. I was able to find just a few hours to squeeze this matter in and did so because we want to maximize every minute available in the courtroom for the families that we all try to serve.

> "Additionally, I set this matter after reviewing every available date between now and the next trial time and could not find any other time, even on a Friday or squeezing this in anywhere else. It appears, based on the report, that continuing this matter further or setting it out in November would be contrary to [M.O.'s] best interest. I appreciate very much Ms. Vardanova's comments; however, it is the Juvenile Law Center that is mother's attorney of record. The Juvenile Law Center did have attorney Brenda Hook present on August 10th. This is not a surprise to the Juvenile

6.

Law Center, as it was … the Juvenile Law Center's request to set this matter for contest.…"

"The statement of contested issues, including questions for [M.O.], was set in the presence of the Juvenile Law Center, along with the deadline for discovery, and the [d]epartment has complied with that deadline for discovery. The [c]ourt will accept the late-filed statement of contested issues filed only yesterday with the exception of [M.O.] being called as a witness.… There has been an impact on [M.O.] as she waits to see if she would be called to testify. All of the solutions proffered by Juvenile Law Center would be appropriate had [M.O.] been listed timely for today's hearing so that she could be prepared by her attorney for today's hearing.

"The [c]ourt denies the request for a continuance, finding that there is not a good cause for the continuance, first because the Juvenile Law Center is the entity that set the matter for hearing. The Juvenile Law Center's internal case management is the firm's responsibility, not the minor's. And the [c]ourt is primarily concerned with the minor. It would be contrary to her best interest. She would be harmed by the request for a continuance …. Therefore the request for a continuance is denied."

County counsel and minor's counsel submitted the matter. Social work supervisor Frank Maldonado Montes testified and was asked why there was a gap between the time mother completed the domestic violence assessment on November 23, 2021, and when she was notified on March 3, 2022, to contact Alternative Health Consultants. Montes said he could not verify that there was a gap but added it was not uncommon for an assessment to take 60 to 90 days to complete. He had not spoken to anyone at Alternative Health Consultants to ascertain whether mother was enrolled in the child abuse program and did not know whether the assigned social worker had spoken to the service provider. He testified M.O. recently had a change of heart regarding visitation and on August 9, asked to visit mother. He did not know if visitation had been arranged.

On cross-examination by county counsel, Montes testified mother had not acknowledged M.O.'s feelings and often blamed M.O. for her removal. On August 9, the care provider reported that mother and M.O.'s biological mother sent M.O. a message telling her she was breaking up the family. In response, M.O. not only requested

visitation but had started lying to the care provider and stealing from her. Montes had not seen any change in mother's behavior and she did not believe she needed domestic violence services. The department still believed there was not a likelihood of reunification.

Mother testified and acknowledged there was unauthorized contact with M.O. but said M.O. initiated it. M.O. missed mother and the family and had been trying to talk to the social worker but the social worker was not listening. M.O. was very upset. Mother contacted Alternative Health Consultants on March 3, 2022, and was told they did not have a referral for her. She informed the social worker. A meeting was conducted in July 2022 and the supervisor asked the social worker to look into the situation. On August 18, the social worker told her she resubmitted the paperwork and Alternative Health Consultants should have the referral. She was instructed to submit a copy of her identification card and they would contact her. She complied.

Mother further testified that she wanted to reunify with M.O. Had M.O. told her what was happening, she would have taken her to the doctor right away and made sure the perpetrator, her grandson's father, would be in jail. She regarded him as an "animal" and he knew that she would call the police if she saw him near her home. She wanted the court to know that she is an honest person and takes care of her children. At the time the sexual abuse occurred, she was recovering from a fall and surgery and she was not moving around. She beat herself up every night because she did not see the signs. The department misconstrued her demeanor as not caring about M.O. but she does not "show textbook feelings."

The juvenile court granted the department's section 388 petition, terminated mother's reunification services and set the section 366.26 hearing. In doing so, the court found the department provided mother reasonable reunification services and that her actions and inactions created a substantial likelihood that reunification would not occur. The court reduced mother's supervised visits to a minimum of once monthly.

## DISCUSSION

### *The Juvenile Court Did Not Err in Denying a Continuance*

Pursuant to section 352, which governs continuances of dependency hearings, the juvenile court has the authority to continue a hearing beyond the time limit specified by statute, provided the continuance is not contrary to the interest of the child.  (§ 352, subd. (a)(1).)  " 'Although continuances are discouraged in dependency cases' [citation], the juvenile court has authority to grant brief, necessary continuances that are not inconsistent with the child's best interests, while giving 'substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.' " (*In re Abbigail A.* (2016) 1 Cal.5th 83, 95.)  We review a juvenile court's ruling on a motion to continue pursuant to section 352 for abuse of discretion.  (*In re B.C.* (2011) 192 Cal.App.4th 129, 143–144.)

Here, the juvenile court denied mother's request for a continuance, finding the Juvenile Law Center's lack of preparedness did not constitute good cause.  More importantly, the court found that continuing the hearing would cause M.O. further and unnecessary emotional stress.

Citing *Hughes v. Superior Court* (1980) 106 Cal.App.3d 1, mother's appellate counsel contends the juvenile court's decision "[t]o force an unprepared counsel to proceed to trial regardless of the reasons for the lack of preparedness would result in a violation of constitutional rights."  (*Id.* at p. 4.)  Counsel's reliance on *Hughes* is misplaced, as that case is readily distinguishable.

In *Hughes*, the appellate court granted a writ of prohibition following the issuance of a contempt order imposed for an attorney's refusal to proceed to trial after his motion for continuance was denied.  (*Hughes v. Superior Court*, *supra*, 106 Cal.App.3d at pp. 3, 6.)  The defense attorney had two cases set for trial on the same Monday.  (*Id.* at p. 3.)  He guessed incorrectly which trial would actually go forward, used the weekend to

prepare that case, and then was denied a continuance on the other unprepared case. (*Ibid.*) Defense counsel claimed he could not give adequate representation in the unprepared case because there was a " 'serious psychiatric issue,' " and he had been unable to interview the psychiatrist appointed to examine the defendant. (*Id.* at pp. 3–4.) The Court of Appeal concluded that, under those circumstances, if counsel had obeyed the court's order to proceed, his compliance would have denied his client a fair trial. (*Id.* at pp. 4–5.) In so holding, the court explained, "The trial court's error was in finding that there was insufficient reason or excuse for petitioner's refusal to obey the court's order to proceed with trial. The sufficient reason was the protection of his client's constitutional right to adequate representation at trial irrespective of the reason for inadequacy." (*Id.* at p. 5.) The court further emphasized that "this is significantly different from a determination that petitioner had no sufficient reason for being unprepared…. The difference between failing without just cause to be ready for trial and failing to obey a court order to proceed to trial because counsel is unprepared is not semantic." (*Ibid.*)

Here, unlike *Hughes*, the juvenile court was called upon to consider whether lack of adequate preparation by counsel constituted good cause for a continuance, not whether an unprepared attorney could be held in contempt for refusing to comply with a court order to proceed to trial. It properly determined that, within its broad discretion, trial counsel had not demonstrated good cause for a continuance. Further, a decision to continue the hearing did not serve M.O.'s best interest but rather potentially subjected an otherwise traumatized child to further trauma. Moreover, appellate counsel does not argue, nor could she, that forcing her[3] to proceed with the case deprived mother of her constitutional rights.

Finally, even if the circumstances before the court did require a continuance, "an abuse of discretion results in reversible error only when the denial of a continuance

---

**3**      Appellate counsel was mother's trial counsel in the case.

results in the denial of a fair hearing, or otherwise prejudices a party." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.)  There is no evidence that mother was prejudiced here.  There is no indication that giving counsel time to prepare questions for M.O. would have assisted her case.  To the extent she wanted to elicit from M.O. that she wanted to visit mother, Montes testified to that fact.  The other critical issue was whether mother was provided reasonable reunification services, which M.O. could not address.

***The Juvenile Court Did Not Err in Granting the Department's Section 388 Petition***

The Welfare and Institutions Code provides that as a general matter 12 months of reunification services "shall be provided" to the parent where a detained child is three years of age or older.  (§ 361.5, subd. (a)(1)(A).)  A parent, however, has no entitlement "to a prescribed minimum period of services."  (*In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1243.)  Subdivision (c)(3) of section 388 permits the early termination of reunification services if the juvenile court finds by a preponderance of evidence that "reasonable services have been offered or provided" to the parent (§ 388, subd. (c)(3)), and by clear and convincing evidence as relevant here that the "action or inaction of the parent … creates a substantial likelihood that reunification will not occur, including, but not limited to, the parent's … failure to visit the child, or the failure of the parent … to participate regularly and make substantive progress in a court-ordered treatment plan." (§ 388, subd. (c)(1)(B).)  We review the juvenile court's decision to grant or deny a section 388 petition for an abuse of discretion.  (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 881.)

Appellate counsel first argues that mother was statutorily entitled to 12 months of reunification services because M.O. was over the age of three when initially removed from her custody.  As we stated above, that is the general rule.  Section 361.5, subdivision (a)(1)(A) requires that the juvenile court provide reunification services from the dispositional hearing to 12 months after the child entered foster care where the child like M.O. was over the age of three when initially removed from parental custody.

11.

A child is deemed to have entered foster care either on the date of the jurisdictional hearing or 60 days after the date of the child's removal, whichever occurs first. (§ 361.49.) M.O. was removed from mother's custody on September 21, 2021, and the jurisdictional hearing was conducted on February 10, 2022. Therefore, she entered foster care on November 21, 2021, 60 days from her initial removal and the earlier date.

Ordinarily, mother would have received reunification services under section 361.5, subdivision (a)(1)(A) until November 21, 2022, 12 months from the date M.O. entered foster care. However, section 388, subdivision (c) expressly allows any party to a dependency proceeding to petition the juvenile court prior to a 12-month review hearing for a child "described by subparagraph (A) of paragraph (1) of subdivision (a) of Section 361.5 … to terminate court-ordered reunification services" under the circumstance set forth above. (§ 388, subd. (c)(1)(B).) Consequently, appellate counsel's argument mother was entitled to 12 months of reunification services fails.

Next, appellate counsel argues mother was not provided reasonable reunification services because there is no evidence the department attempted to reinstate visitation after August 9, 2022, when M.O. said she wanted visitation or assist mother in enrolling in the child abuse intervention program between March and July 2022. Appellate counsel further argues services were not reasonable because the department completely failed to arrange for mother to undergo a risk assessment.

With regard to visitation, according to the record, mother was placed on a waiting list for intensive therapeutic visits on November 4, 2021, four days after the juvenile court vacated its detriment finding and specifically ordered it. Mother had three visits in January 2022 and one on February 9, 2022, before M.O. refused to continue visiting. Visitation was not a consideration until M.O. expressed a desire to resume visitation with mother on August 9, 2022. However, those intervening months were not reflective of the department's failure to arrange visitation but rather mother's behavior toward M.O. As the juvenile court explained,

"The [d]epartment offered the best services it had, which were intensive supervised therapeutic visits so that there would be someone there to coach the mother in communicating with [M.O.] and encouraging the mother to be able to show her empathy. And there are very specific actions of the mother that are detailed in this report that led to [M.O.'s] significant resistance to visiting with the mother. So this is not a case where the child simply refused. This was a child quite literally crying out for affection … and as a result of the mother's actions … [M.O. felt afraid and concluded] that … mother was mean and she did not want to visit with her."

Further, appellate counsel fails to show that it was unreasonable for the department not to have arranged intensive therapeutic visits in the two weeks between M.O.'s request for resumption of visitation on August 9 and the hearing on August 23, 2022, given the amount of time it took to arrange them in the first place.

Regarding the domestic violence requirement, mother completed a domestic violence assessment on November 23, 2021, and was referred for a child abuse intervention class. According to Montes, which the juvenile court credited, it could take 60 to 90 days to receive the assessment. On March 3, 2022, mother was notified to contact Alternative Health Consultants, a provider of a child abuse intervention class. According to the record, mother was given a virtual class at her request. She was not successful in enrolling in the class for reasons not explained in the record. In any case, the social worker attempted to contact mother twice in July 2022 to assist her. On that evidence, the juvenile court found the department's efforts to provide mother domestic violence services were reasonable. We agree. Although, "[i]n almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) We cannot say the department's efforts in this case were not reasonable. In addition, we are mindful of Montes's testimony that mother did not believe she needed domestic violence services, which may have contributed to a delay in starting the class.

Lastly, although it is true the department did not arrange for mother to have a risk assessment, she fails to show the results of a risk assessment were so critical to her services plan objectives that the failure to provide it rendered them unreasonable overall.[4] The biggest obstacle to reunification was mother's inability to be protective; specifically, her lack of empathy and attributing blame to M.O. for the circumstances requiring her removal. Mother was provided child abuse intervention services and therapeutic visits to assist her. She fails to show that those services were insufficient and that a risk assessment was necessary to achieve reunification.

Finally, appellate counsel does not challenge the juvenile court's finding that mother's action or inaction created a substantial likelihood that reunification would not occur. Consequently, we need not address it and affirm the juvenile court's order granting the department's section 388 petition.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).

---

[4] Real party in interest contends this issue was forfeited because trial counsel did not include it among the services that she argued were unreasonable. We concur with appellate counsel that mother did not forfeit her right to raise the issue on appeal even though she did not object below. "Generally, issues not raised in the trial court cannot be raised on appeal. 'The contention that a judgment is not supported by substantial evidence, however, is an obvious exception to the rule.' [Citation.] In other words, when the merits of a case are contested, a parent is not required to object to the agency's failure to carry its burden of proof." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 464.) Since reasonableness of services is reviewed for substantial evidence, mother may challenge the department's failure to provide her a risk assessment for the first time on appeal.