Filed 4/7/25  In re M.H. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.H. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.H.,<br><br>Defendant and Appellant. | F088943<br><br>(Super. Ct. Nos. 23CEJ300116-2, 23CEJ300116-3, 23CEJ300116-4)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Mary Dolas, Judge.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Peña, J. and Smith, J.

Appellant M.H. is the father of M.H., Jr. (five years old),[1] A.H. (three years old), and R.H. (two years old), who are the subjects of this dependency matter. Father challenges an order issued by the juvenile court after a combined hearing considering his Welfare and Institutions Code[2] section 388 petition, and a section 366.26 permanency plan for the three children. The court order denied father's section 388 petition, concluded adoption was the appropriate permanent plan for each child, and terminated parental rights.[3] We affirm the order.

**PROCEDURAL AND FACTUAL SUMMARY**

**_Detention_**

A juvenile dependency petition was filed on April 27, 2023, alleging mother failed to protect her four children. Father was named as the alleged father of three of the four children listed in the petition. The petition contained allegations that mother's home was unsanitary, she had a substance abuse problem, and that she had exposed her children to her mother's methamphetamine use.

Following a detention hearing, the juvenile court found a prima facie case had been made that the children qualified as dependents under section 300, and that allowing the children to remain in their mother's home was contrary to their welfare. While father was present at the detention hearing, he was not granted visitation rights because he was designated only as an "alleged" father in the petition.

---

[1] These are the ages of the children at the time of the November 6, 2024, order entered in this case.

[2] All further statutory references are to the Welfare and Institutions Code.

[3] The mother, whose parental rights were also terminated, is not part of this appeal. Also, a fourth child listed in the dependency petition, who was alleged to have a different father, is not part of this appeal.

### *Jurisdiction and Disposition Hearing*

A jurisdiction and disposition hearing was held on June 5, 2023, at which time the court found true the allegations mother had not protected her children, and the children should be declared dependents under section 300, subdivision (b). Father was denied reunification services because of his designation as an "alleged" father. Father was present at the hearing and filed a waiver of rights submitting the matter on the report created by the Fresno County Department of Social Services (department).

### *Six-Month Review Hearing*

Prior to this hearing, father submitted a request for blood or DNA testing to determine whether he was the biological father of M.H., Jr., A.H., and R.H (collectively, the children). The juvenile court entered an order for paternity testing on December 4, 2023, and continued the hearing.

At the six-month review hearing held on January 22, 2024, which father attended, the juvenile court noted paternity testing was still pending, possibly due to a problem with the minute order granting the request for DNA testing. At the conclusion of the hearing, the court determined the children would remain dependents and family reunification services for mother would be terminated.[4] The court also set a date for a section 366.26 hearing.

On February 9, 2024, paternity tests revealed father was the biological parent of all three children. Father was granted twice weekly visits with the children in February 2024. However, father's status was not formally elevated from "alleged" to "biological" father by the court until May 20, 2024.

---

[4] When the children were removed from mother's home in April 2023, two of the children were under the age of three, and therefore, subject to section 361.5, subdivision (a)(1)(B), stating reunification services could be limited to a period of six months, but no more than 12 months.

## *Section 366.26 Hearing and Section 388 Petition*

According to a report prepared by the department and submitted to the juvenile court considering the permanent plan for the children, father was consistently participating in the visits he had been provided. Because the social worker assigned to the case was not available to observe the visits before this report was prepared, the original report does not provide any information about the quality of those visits. Instead, in an addendum report submitted to the court on November 6, 2024, the social worker provided information about three visits she observed between father and the children, all in June 2024. This summary of the visits included information showing father made efforts to interact with all three children in appropriate ways. At one point it is also noted, "[u]pon completing the supervised visits, it is observed that [father] does care about his children, however it is not sufficient to reunify."

For a variety of reasons, the contested section 366.26 hearing did not occur until October 30, 2024. A section 388 petition filed by father was also considered at this hearing. This petition, which was filed on October 9, 2024, asked the court to modify its prior court order from June 5, 2023, denying father reunification services. Father attached various documents to his section 388 petition and provided information about his attachment to the children, information about when they resided with him, and other milestones he had with his children.

In his testimony in support of the petition, father described how he was not initially provided visits with the children because he was not named on their birth certificates. Once DNA testing was completed and he could prove he was their biological parent, father was able to visit with the children. Father stated that he continued with these visits until they were stopped for an unknown reason. Father also described how he had enrolled in parenting classes on his own but could not complete the classes because time devoted to those classes along with the visits with the children could jeopardize his

4.

work.  Father noted when he visited the children they were excited when the visits started, and sad when the visits ended.  Father also testified the children called him "dad."

During the section 366.26 portion of the hearing, social worker Angela Rascon Valles testified on behalf of the department.  Valles testified that the visits coordinated through the department stopped in September 2024 because father had missed three consecutive visits.  Valles was aware, however, that father visited the children one to two weeks before the hearing, which was arranged by the caregiver.  However, while Valles testified the visits were generally good, and the children were happy to see him because they knew he would play with them, she believed the relationship was more of a friendship even though they called him "dad."

After the parties were each given the opportunity to present arguments, the juvenile court took the matter under submission in light of the "complexity that has to be addressed."  On November 6, 2024, the court started by addressing the section 388 petitions brought by both mother and father.[5]  The court first noted that even though reunification services were never provided to father given his earlier status as an "alleged" father, the court was required "to shift [its] focus to the needs of the children and their need for permanency and stability."  The court further noted father had the "burden to present credible and substantial evidence of changed circumstances that would warrant further reunification services," and that statutory time periods governing how long reunification services could be provided must be considered.

The juvenile court then went through the history of the case, noting that while proceedings had begun in May 2023, father had not requested the blood or DNA testing necessary to change his status from "alleged" to "biological" father until December 2023, and that the documentation necessary to make that change was not submitted to the court until May 2024.  The court ultimately issued the following ruling:

---

[5]     Again, our focus is on the petition brought by father.

"[I]n reviewing the testimony and information in the Department's report and considering cases that have addressed the issue of changed circumstances versus changing circumstances, the Court finds at this time, in regards to father's [petition], that he did not submit sufficient evidence to show a changed circumstance, nor … was there any evidence in regards to [whether] he meets the criteria, as a biological father, to receive reunification services and/or meets the criteria to permit ordering him reunification services when the statutory time period has expired.  So the Court at this point, based on the insufficient evidence being provided to support the request, will deny [father's] request to order six months of family reunification services, in that he's not met his burden of showing a changed circumstances that would warrant a finding that it would be in the children's best interest."

Turning to the section 366.26 permanency plan, the court found the evidence clearly showed the children were each adoptable and that adoption was the appropriate permanent plan.  The court then terminated father's parental rights.

Father filed a notice appealing this decision on November 13, 2024.

## DISCUSSION

The focus of father's appeal is the denial of the section 388 petition he submitted requesting reunification services.  However, a review of the notice of appeal initiating this matter reveals an appeal of the order terminating father's parental rights was the only order specifically challenged.  The box on the second page of the notice of appeal indicating an order involving a section 388 petition is also being appealed is not checked.

Pursuant to California Rules of Court, rule 8.405(a)(3), "[a] notice of appeal must be liberally construed, and is sufficient if it identifies the particular judgment or order being appealed."  Because the notice of appeal filed in this case lists the order from November 6, 2024, denying father's section 388 petition, out of an abundance of caution, we conclude father has preserved his right to appeal that order.  (See *In re Madison W.* (2006) 141 Cal.App.4th 1447, 1450–1451.)  We take this approach as father's position in this appeal focuses on the argument that the denial of reunification services led to the

6.

termination of his parental rights. No additional arguments are raised with respect to the termination of father's parental rights.

## I. The Section 388 Petition

### A. Standard of Review

"A juvenile court dependency order may be changed, modified, or set aside at any time. (§ 385.) A parent may petition the court for such a modification on grounds of change of circumstance or new evidence. (§ 388, subd. (a).) The parent, however, must also show that the proposed change would promote the best interests of the child. (§ 388, subd. (a)(2) ….)" (*In re J.C.* (2014) 226 Cal.App.4th 503, 525.)

Even with this ability to seek modification, the child's best interests are not to delay permanency and stability in order to reward a parent for "hard work and efforts to reunify." (*In re J.C.*, *supra*, 226 Cal.App.4th at p. 527.) Therefore, "[i]f the court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a hearing under section 366.26." (*In re Caden C.* (2021) 11 Cal.5th 614, 630.)

With respect to a section 388 petition, the change in circumstances necessary to support the petition must be material. (*In re N.F.* (2021) 68 Cal.App.5th 112, 120.) The juvenile court may deny the petition without holding an evidentiary hearing if it believes a prima facie showing has not been made. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188–189.) A petition does not meet the prima facie standard unless facts alleged in the petition are supported by relevant evidence, and support a favorable decision on the petition. (*In re J.P.* (2014) 229 Cal.App.4th 108, 127.)

The goal is to show changed, not changing, circumstances. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, disapproved by *In re Caden C.*, *supra*, 68 Cal.5th 614, specifically on the compelling nature of the parent-benefit exception found in § 366.26, subd. (c)(1).) "The change of circumstances or new evidence ' "must be of such significant nature that it requires a setting aside or modification of the challenged prior order.' " (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.) Therefore, when "determining whether a

parent has made a prima facie showing under section 388, we may consider the entire factual and procedural history of the case." (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 711.)

A juvenile court's decision to either grant or deny a petition to modify a previous order involves the exercise of discretion, which will not be overturned absent a clear abuse of that discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).)

> " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Stephanie M.*, *supra*, 7 Cal.4th at pp. 318–319.)

Therefore, "[w]e will not disturb the court's determination unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 881.)

### B.     Application

In his section 388 petition, father asked the juvenile court to provide him reunification services, which he had been denied in the past. Addressing the question of what had changed since he was denied these services in June 2023, father stated the court would not elevate his status from "alleged" to "presumed" father of the children in December 2023. Father was later declared the "biological" father of all three children in May 2024.

During his testimony to the juvenile court, father described his efforts to obtain visits with his children, which did not occur until the DNA tests showed he was their biological father in February 2024. At this point, the department finally allowed visits to occur. Father's testimony also addressed missed visits with the children due to his work obligations. When asked about how this would change in the future, father stated if reunification services were provided and the children could be placed in his home, he could rely on his family, if necessary, to care for the children while he was at work.

8.

However, no evidence was provided to the court establishing family members were actually available to take on the role of caregiver when father was not able to be with his children because of work obligations.

The juvenile court first addressed father's section 388 petition and concluded he failed to provide sufficient evidence of changed circumstances or evidence supporting the need to receive reunification services beyond the allowable statutory time period. After father's section 388 petition was denied, the court moved on to address the permanent plan for the children. The court then found the children were adoptable, and further, exceptions for parental and/or sibling benefits had not been shown to apply to prevent the choice of adoption as the permanent plan.

A review of the "entire factual and procedural record" of this case (*In re Daniel F.*, *supra*, 64 Cal.App.5th at p. 711) supports the conclusion the juvenile court did not exceed "the limits of legal discretion by making an arbitrary, capricious or patently absurd determination," when denying the section 388 petition. (See *In re Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881.) Sadly, father failed to move with enough speed to establish his biological connection to the children during a period of time when reunification services could have had more impact on the permanent plan eventually adopted by the court. When father submitted his request for reunification services, the focus had already shifted to the needs of the children for " 'permanency and stability ….' " (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) While the complete record provides evidence of father's efforts to be part of his children's lives, it also provides evidence of missed visits and some uncertainty surrounding his ability to provide financially for his children. The facts support the court's conclusion that father's circumstances were changing rather than changed and would not prevent the court from implementing a permanent plan, especially in light of statutory timelines that had already expired. (See *In re Mickel O.*, *supra*, 197 Cal.App.4th at p. 615.)

We address an issue raised by father in his reply brief. Father repeats an argument raised in his opening brief that "section 388 does not require that circumstances be completely changed," and that the juvenile court was too cavalier when highlighting the facts showing father's circumstances were only changing and not changed. However, case law is consistent in the requirement that a parent must show, by a preponderance of the evidence, that a change in circumstances existed and that this change served the best interests of the children. (See § 388, subds. (a)(2), (c), (d); Cal. Rules of Court, rule 5.570(h)(1); *In re M.V.* (2006) 146 Cal.App.4th 1048, 1056–1057.) The fact circumstances might change or are changing for the better, "does not promote stability for the child or the child's best interests. [Citation.] ' "[C]hildhood does not wait for the parent to become adequate." ' " (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 47.)

Based on our review of the juvenile court's ruling on the section 388 petition, we cannot conclude the court abused its discretion. The decision was within the "bounds of reason" while contemplating the best interests of all three children. (See *Stephanie M.*, *supra*, 7 Cal.4th at pp. 318–319.)

## DISPOSITION

The order denying father's section 388 petition and terminating his parental rights is affirmed.